10155-00113-JLS

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
By:  John L. Slimm, Esquire -- NJ Attorney ID:  263721970 (JLSlimm@mdwcg.com)
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ  08002                    856-414-6000
Attorneys for Defendant, The Honorable Dennis P. McInerney, Individually

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ANTHONY KNEISSER<br><br>    Plaintiff,<br><br>vs.<br><br>THE HONORABLE DENNIS P.<br>MCINERNEY, Individually and in his official<br>capacity as Municipal Court Judge of<br>Burlington Township and the Burlington<br>Township Municipal Court; TOWNSHIP OF<br>BURLINGTON; TOWNSHIP OF<br>BURLINGTON MUNICIPAL COURT; and<br>JOHN DOES 1-10<br><br>    Defendants. | CIVIL ACTION NO:<br>1:15-cv-07043-NLH-AMD |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO**
**FED. R. CIV. P. 56**

LEGAL/109321537.v1

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY AND FACTUAL STATEMENT ........................................... 1

ARGUMENT ........................................................................ 19

    *I.*   THE SUMMARY JUDGMENT STANDARD ................................................ 19

    *II.*  AN ORDER FOR SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANT JUDGE MCINERNEY UNDER THE DOCTRINE OF JUDICIAL IMMUNITY ........................................................................ 20

CONCLUSION ........................................................................ 32

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

**Page**

<u>A.V. v. Ashrafi</u>, 2015 N.J. Super. Unpub. LEXIS 1444 (BER-C- 58-15) (Ch. Div. June 11, 2015) ................................................................................................................ 24, 30, 31

<u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248, 249, 251-52 (1986).......................................... 20

<u>Azubuko v. Royal</u>, 443 F. 3d 302, 303 (3d Cir. 2006) ............................................... 30

<u>Barnes v. Winchell</u>, 105 F. 3d 1111, 1122 (6th Cir. 1997)............................................................ 28

<u>Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.</u>, 31 N.J. 124, 139-40 (1959) ......... 26

<u>Bradley v. Fisher</u>, 80 U.S. (13 Wall.) 335, 347, 351, 20 L. Ed. 646 (1872).......................... 23, 26

<u>Butz v. Economou</u>, 438 U.S. 478 (1978) ..................................................................................... 27

<u>Capogrosso v. Supreme Court of N.J.</u>, 588 F. 3d 180, 184 (3d Cir. 2009).................................. 30

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) ............................................................... 19, 20

<u>Cleavinger v. Saxner</u>, 474 U.S. 196, 1999, 106 S. Ct. 496, 499-500, 88 L. Ed. 2d 507, 513 (1985)......................................................................................................................... 25

<u>Curley v. Klem</u>, 298 F. 3d 271, 276-77 (3d Cir. 2002) ............................................................... 20

<u>Delbridge v. Schaeffer</u>, 238 N.J. Super. 323, 334 (Law Div. 1989)............................................ 25

<u>Figueroa v. Blackburn</u>, 208 F. 3d 435, 440-445 (3d Cir. 2000) ............... 20, 23, 26, 27, 28, 29, 30

<u>Figueroa v. Blackburn</u>, 39 F. Supp. 2d 479, 483, 494, 495 (D.N.J. 1999) ................. 22, 23, 28, 29

<u>Forrester v. White</u>, 484 U.S. 227 ................................................................................................. 24

<u>Grove v. Van Duyn</u>, 44 N.J.L. 654, 656 (E&A 1882) .................................................................. 26

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) ........... 24

<u>Hawkins v. Harris</u>, 141 N.J. 207, 214 ......................................................................................... 24

<u>In Re Daniels</u>, 118 N.J. 51 (1990) ............................................................................................... 29

<u>Ingram v. Twp. of Deptford</u>, 858 F. Supp. 2d 386, 390 (D.N.J. 2012) ....................................... 24

LEGAL/109321537.v1

Jaye v. Judge Yolanda Ciccone, A-3817-13T2 (App. Div. February 25, 2016) ............. 24, 25, 26

K.D. v. Bozarth, 313 N.J. Super. 561, 568 (App. Div.), certf. denied, 156 N.J. 425 (1998)........ 25

Mireles v. Waco, 502 U.S. 9-12 (1991)................................................................. 22, 23, 24, 25, 26

Mitchell v. Forsythe, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985) .................. 23

Owens v. Feigin, 194 N.J. 607, 611 (2008) ............................................................................... 31

Pasqua v. Council, 186 N.J. 127, 150 (2006) ........................................................................... 24

Perez v. Zagami, LLC, 218 N.J. 202, 213 (2014)...................................................................... 31

Pierson v. Ray, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 1217, 18 L. Ed. 2d 288, 294
    (1967)............................................................................................................................ 23, 24, 25

Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536 (1868).............................................................. 23

State v. Debonis ............................................................................................................................. 6

Stump v. Sparkman, 435 U.S. 349, 355-57, 362-63, 55 L. Ed. 2d 331, 98 S. Ct. 1099
    (1978)............................................................................................................... 24, 26, 27, 28, 30

Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45
    (1989)............................................................................................................................... 31

**STATUTES**

42 U.S.C. §1983 ................................................................................................ 1, 7, 30, 31

N.J.S.A. 10:6-1 to 2 ................................................................................................ 30

N.J.S.A. 10:6-2................................................................................................................ 7

N.J.S.A. 2B:12-1 .................................................................................................... 2, 26

N.J.S.A. 2B:12-4 ...................................................................................................... 1, 2

N.J.S.A. 2B:12-17 ................................................................................................ 26, 28

N.J.S.A. 2C:33-4(a) ............................................................................................. 20, 22

N.J.S.A. 39:4-64................................................................................................................ 2

## OTHER AUTHORITIES

Burlington Township Municipal Ordinance 20-47 ..................................................... 1, 2

## RULES

Fed. R. Civ. P. 56 ................................................................................................... 1

Fed. R. Civ. P. 56(c) ......................................................................................... 19, 20

RR. 3:23, 3:24, and 7:13-1 ................................................................................... 27

R. 1:10-1 ........................................................................................ 21, 27, 29

LEGAL/109321537.v1

## PRELIMINARY STATEMENT

This matter is before the Court in connection with the Motion for Summary Judgment of defendant, The Honorable Dennis P. McInerney, Individually, in his official capacity as Municipal Court Judge of Burlington Township, pursuant to Fed. R. Civ. P. 56.  This Motion is based upon the Doctrine of Judicial Immunity, and seeks an Order dismissing all claims against Judge McInerney as asserted in the plaintiff's Complaint.

## PROCEDURAL HISTORY AND FACTUAL STATEMENT

On September 23, 2015, plaintiff Anthony Kneisser filed a Complaint in the United States District Court for the District of New Jersey, under CA No. 1:15-cv-07043-NLH-AMD. (See Stmt. of Material Facts; see also, Exhibit "1").  On December 9, 2015, defendant The Honorable Dennis P. McInerney, Individually filed an Answer to the Complaint.  (See Stmt. of Material Facts; see also, Exhibit "2").

On defendants Township of Burlington, Township of Burlington Municipal Court, and Dennis P. McInerney, Burlington Township Municipal Court Judge in his official capacity filed their Answer to the Complaint.  (See Stmt. of Material Facts; see also, Exhibit "3").

The Complaint alleges that defendant Dennis P. McInerney was appointed by the Mayor of the Township of Burlington, with the advice and consent of the Burlington Township Council as a Municipal Court Judge of the Burlington Township Municipal Court pursuant to N.J.S.A. 2B:12-4 and Burlington Township Municipal Ordinance 20-47.  (See Exhibit "1").  The

1

Complaint alleges that as a Municipal Court Judge, Judge McInerney was a Municipal Official and Officer of the Township of Burlington.  (See Exhibit "1").  Then, in March of 2013, Judge McInerney was appointed as the Presiding Judge of all Municipal Courts in Burlington County. (See Exhibit "1").

The Complaint further alleges that defendant Township of Burlington is a Municipality organized under the laws of the State of New Jersey.  (See Exhibit "1").  The Complaint states that the Township of Burlington, its Mayor, and Council were required under N.J.S.A. 2B:12-4 to establish the Municipal Court, with the authority to appoint Municipal Court Judges.  (See Exhibit "1").

Also, the Complaint alleges that the Township of Burlington, its Mayor, and Council acted pursuant to that authority, and implemented Burlington Township Municipal Ordinance 20-47, which authorized them to appoint a Municipal Court Judge.  (See Exhibit "1").  The Complaint states that pursuant to the Statute and Borough Ordinance, Judge McInerney was appointed as the Municipal Court Judge.  (See Exhibit "1").

It is alleged in the Complaint that the Burlington Township Municipal Court is a Municipal Court established and organized by Burlington Township, its Mayor, and Council, pursuant to N.J.S.A. 2B:12-1, *et seq.*, and Burlington Township Municipal Ordinance 20-47. (See Exhibit "1").

The Complaint also states that on May 14, 2014, Mr. Kneisser received Summons No. 0306-E-1400-0272 for throwing a cigarette butt from the window of his car in violation of N.J.S.A. 39:4-64.  (See Exhibit "1").  The Complaint alleges that the fine for the violation is set by Statute to be a minimum of $200.00, and a maximum of $1,000.00 for each offense under N.J.S.A. 39:4-64.  (See Exhibit "1").

2

According to the Complaint, Mr. Kneisser was unable to pay the fine amount in full prior to or on the hearing date.  The Complaint alleges that he called the Municipal Court to determine whether there were alternatives to paying the fine in full, and was advised that an appearance in Court was required.  The Complaint alleges that Kneisser appeared in Court with the intention to plead guilty, and request a payment plan or community service.  (See Exhibit "1").

The Complaint alleges that on May 27, 2014, Mr. Kneisser appeared before Judge McInerney in the Municipal Court to plead guilty, and request a payment plan or community service.  The Complaint states that the entire amount of the offense, with Court costs and fees, amounted to $239.00.  (See Exhibit "1").

According to the Complaint, when Kneisser entered the Court, he spoke to the Municipal Prosecutor to request payment alternatives, and was advised by the Prosecutor to make the request to Judge McInerney.  (See Exhibit "1").  When he finally appeared before Judge McInerney, the Court asked how Kneisser wanted to plead.  According to the Complaint, Kneisser indicated that he wanted to plead guilty, and wanted to see if there was an alterative to paying the fine in full.  (See Exhibit "1").  The alternatives he sought were community service or a payment plan.  According to the Complaint, Judge McInerney advised that there would be no substitution, and Kneisser was ordered to return to the payment window to pay.  (See Exhibit "1").

The Complaint refers to a transcript as follows:

> THE COURT: Anthony, it looks like Kneisser, come on up, sir.
> You're charged with throwing an object from the vehicle. There's a $100
> fine for that — actually, there's a $200 fine for that offense. You have
> the right to be represented by a lawyer. If you can't afford one, you can
> apply to have one appointed. Do you understand that?
>
> MR. KNEISSER: Yes.
>
> THE COURT: Are you ready to proceed without a lawyer?

3

MR. KNEISSER: Yes.

THE COURT: How do you wish to plea?

MR. KNEISSER: I mean, I'm guilty, but I was hoping there's a way to avoid the fine. Can I do some community service or something?

THE COURT: No. There's no way to avoid the fine. What did you throw out of the vehicle?

MR. KNEISSER: Cigarette butt on the turnpike.

THE COURT: All right, there's a $206 fine, $33 court costs. The statute specifically mentions cigarettes and cigarette butts.

MR. KNEISSER: All right.

THE COURT: It's a $206 fine, $33 court costs. Either you use an ashtray or quit smoking. Check out at the window.

(May 27 Tr., p. 8, ¶1-3).

(See Exhibit "1").

According to the Complaint, Kneisser went to the Clerk's window, and then saw a sign which stated:



**PLEASE NOTE:**
IF YOUR FINES TOTAL OVER $200:

YOU ARE REQUIRED TO MAKE AT LEAST
A $200 PAYMENT TODAY

IF YOUR FINES TOTAL $200 OR LESS:

YOU ARE REQUIRED TO PAY YOUR FINE IN FULL TODAY

(See Exhibit "1").

According to the Complaint, Kneisser advised the Clerk that he was unable to pay the $200.00.  He was then given a financial questionnaire to establish indigency.  (See Exhibit "1").

4

The Complaint states that Kneisser returned to the courtroom, at which time a colloquy took place as follows:

> THE COURT: Anthony Kneisser. Come on up, sir. You have 239, how much are you paying today?
>
> MR. KNEISSER: I don't have anything today.
>
> THE COURT: When can you make a payment?
>
> MR. KNEISSER: Early June.
>
> THE COURT: I'm sorry?
>
> MR. KNEISSER: Early June.
>
> THE COURT: You need to make a payment today, sir. Go make a phone call.
>
> MR. KNEISSER: I don't have anyone that (indiscernible).
>
> THE COURT: All right. I'll sentence you to five days in jail. Go with the officer.
>
> MR. KNEISSER: Really.
>
> THE COURT: Really. I gave you a chance to make a phone call, sir.
>
> MR. KNEISSER: I don't have any friends that could help me out - -
>
> THE COURT: All right. Well then you do the time. You're refusing to pay.
>
> (May 27 Tr., p. 8).

(See Exhibit "1").

The Complaint alleges that the Judge's statement to Kneisser was made "… in an attempt to justify his so obvious illegal conduct."  (See Exhibit "1").  The Complaint alleges that the Municipal Court Judge did not determine whether, and to what extent Kneisser was able to pay under an installment plan.  (See Exhibit "1").  The Complaint states that the plaintiff attempted to explain that there was no one he could call, and at that point the Court ordered Kneisser to jail.

5

(See Exhibit "1").  The Complaint states that Kneisser was arrested, handcuffed, and thrown in the Burlington Township Jail, and was waiting to be transferred to the Burlington County Prison for $239.00.  (See Exhibit "1").

The Complaint alleges that Judge McInerney was interested in generating revenue.  (See Exhibit "1").  Also, it is alleged in the Complaint that the Court Administrator advised plaintiff's father that the Court acts to "get their money as fast as they can", and that "it's all about collection."  (See Exhibit "1").

The Complaint alleges that the Municipal Court Judge's conduct, practice, and policy were a violation of the United States and New Jersey Constitutions, as well as related Federal and State laws.  (See Exhibit "1").

The Complaint alleges that Kneisser appealed his sentence to the Honorable Thomas Kelly of the Burlington County Superior Court.  The Municipal Court appeal was heard on September 18, 2014.  (See Exhibit "1"; see also transcript of Municipal appeal of September 18, 2014, Exhibit "5").  On the Municipal Court appeal, Judge Kelly ruled that defendants convicted of traffic violations are permitted to pay their fines in installments.  (See September 18, 2014 Transcript, p. 17, ¶7, Exhibit "5").  Judge Kelly recognized that collecting fines is a real problem in Municipal Courts.  (See September 18, 2014 Transcript, p. 19, ¶16, Exhibit "5").  However, Judge Kelly stated that policies one sets out to collect fines must be consistent with the law, and the State v. Debonis case.  (See September 18, 2014 Transcript, p. 19, ¶16, Exhibit "5").

The Complaint further alleges that as the policy of Judge McInerney in the Burlington Township Municipal Court to incarcerate Municipal defendants who are willing, but unable to pay mandatory fines imposed by the Court.  (See Exhibit "1").  Plaintiff alleges in his Complaint that he is entitled to damages for violations of constitutional rights to due process and equal

protection, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, and other damages to be determined by a jury and the Court. He also seeks a Declaratory Judgment that the Municipal Court of Burlington Township's policy is unconstitutional. In addition, an Order is sought to enjoin the Burlington Township Municipal Court from implementation of "this unconstitutional policy." (See Exhibit "1").

In Count I, it is alleged that all defendants are "persons" under 42 U.S.C. §1983, and that the defendants implemented an unconstitutional policy and custom to jail offenders incapable or unable to pay their fines. (See Exhibit "1").

In Count II, it is alleged that the defendants violated 42 U.S.C. §1983, due process and equal protection, by sentencing Kneisser to prison for being unable to pay the fine, and by refusing to consider alternative arrangements, the Court violated Kneisser's equal protection and due process rights under 42 U.S.C. §1983. (See Exhibit "1"). It is also alleged that by depriving plaintiff of his rights, there was a violation under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. (See Exhibit "1").

In Count III, plaintiff alleges a violation of the New Jersey Civil Rights Act, together with claims for due process and equal protection. (See Exhibit "1"). Here, it is alleged that all defendants are persons under N.J.S.A. 10:6-2, *et seq.*, who implemented an unconstitutional policy and custom to jail offenders incapable or unable to pay their fines. (See Exhibit "1"). The Complaint alleges in Count III that by sentencing Kneisser to five days in prison for being unable to pay his fine on the date in question, and by refusing to consider alternative arrangements prior to sentencing Kneisser to prison, the Municipal Court Judge violated Kneisser's equal protection and due process rights, violated N.J.S.A. 10:6-2, and the laws of the State of New Jersey. (See

Exhibit "1").  It is alleged that the acts of the defendants were done "willfully, maliciously, and with reckless disregard of plaintiff's rights."  (See Exhibit "1").

In Count IV, it is alleged that this was a fine only offense, and that the Municipal Court Judge lacked the authority to transfer a fine only offense to a term of imprisonment.  (See Exhibit "1").  It is alleged that the Municipal Court Judge acted contrary to New Jersey State law, which violated Kneisser's constitutional rights.  (See Exhibit "1").  Once again, it is alleged that the acts of all defendants were done willfully, maliciously, and with reckless disregard of Kneisser's rights.  (See Exhibit "1").

In Count V, it is alleged that Judge McInerney asked plaintiff, when he initially appeared, whether he wanted to be represented by counsel prior to rendering his plea.  (See Exhibit "1").  The Complaint states that Kneisser indicated that he was waiving his right to counsel with respect to those charges only, but did not waive his right to be represented regarding his imprisonment.  (See Exhibit "1").  It is alleged that the Municipal Court Judge sentenced Kneisser to the Burlington County prison, without first giving Kneisser an opportunity to be heard or represented by counsel regarding incarceration.  (See Exhibit "1").  It is alleged that this was a violation of plaintiff's right to counsel under the New Jersey and United States Constitutions.  (See Exhibit "1").  Once again, it is alleged that the acts of the defendants were done willfully, maliciously, and with reckless disregard of plaintiff's rights.  (See Exhibit "1").  It is alleged that as a result of the unlawful and malicious detention and confinement, plaintiff was deprived of his constitutional right to counsel.  (See Exhibit "1").

In Count VI, plaintiff alleges intentional misconduct by all defendants, alleging that the defendants lack the legal authority to convert a fine only offense into a term of imprisonment, and further lack the authority to sentence Kneisser to jail for his inability to pay the fine.  (See

Exhibit "1").  It is alleged that Kneisser was then arrested, detained, and confined against his will.  (See Exhibit "1").  It is alleged that the defendants committed a false arrest and false imprisonment.  (See Exhibit "1").  Once again, it is alleged that the actions were done willfully, maliciously, and with callous disregard of plaintiff's rights.  (See Exhibit "1").  It is alleged that plaintiff was deprived of his liberty without due process, and his right to equal protection in violation of the laws of the United States and the New Jersey Constitution.  (See Exhibit "1").

In Count VII, the Complaint alleges, "Personal Liability of Judge McInerney."  The Complaint states that Judge McInerney suppressed Kneisser's testimony, and refused to consider any explanation regarding indigency or ability to pay the fine in full.  (See Exhibit "1").  Count VII alleges that Judge McInerney attempted to circumvent the law, falsified Kneisser's testimony, and concluded that Kneisser was "refusing" to pay the fine.  (See Exhibit "1").  Count VII alleges that the Municipal Court's decision to sentence Kneisser to prison was "predetermined from the outset, and clearly expressed in his opening statement."  (See Exhibit "1").  The Complaint alleges that if a defendant could not pay, Judge McInerney would misrepresent the facts, claiming that the defendant was refusing to pay, and would then sentence him to prison without consideration of financial circumstances.  (See Exhibit "1").  It is alleged that the conduct of Judge McInerney was willful, fraudulent, and in blatant disregard of the United States and New Jersey Constitutions.  (See Exhibit "1").

The Complaint next alleges that Judge McInerney is not entitled to judicial immunity for willful and malicious conduct, and is therefore personally liable to plaintiff for damages caused by the same.  (See Exhibit "1").

In his deposition on November 22, 2016, Anthony Kneisser testified that there was not an issue about his having thrown a cigarette out of the car.  (See Stmt. of Material Facts; see also,

Exhibit "4").  Anthony Kneisser testified that when he went to Court "money was tight", and he was looking for community service.  (See Exhibit "4").  Plaintiff testified that he did discuss his appearance with his family prior to the hearing date, and he asked his father, Dr. Kneisser, for financial support to pay the fine.  (See Exhibit "4").  Dr. Kneisser refused to help his son, stating, "No.  It's your ticket.  You're working.  Figure out how to pay it.  Go do community service, work for it or go on a payment plan."  (See Exhibit "4").  Anthony testified that he asked his father for a loan for the ticket.  However, Dr. Kneisser refused.  (See Exhibit "4").

On the date of the hearing, Anthony spoke to the Municipal Prosecutor, and asked if he could get community service or a payment plan.  (See Exhibit "4").  The Prosecutor told Anthony to see the Judge.  (See Exhibit "4").  Mr. Kneisser then went to Judge McInerney, and told the Judge that he was pleading guilty with a hope to do community service in lieu of a fine. (See Exhibit "4").  Mr. Kneisser testified that he was told by Judge McInerney that the fine could not be waived for community service, and that he would have to pay it.  However, he was told to go to the cashier to fill out a financial questionnaire.  (See Exhibit "4").

At that point, Mr. Kneisser went the window, and filled out the questionnaire detailing expenses and worth.  (See Exhibit "4").  Mr. Kneisser then handed the questionnaire in, and it was given to the Judge.  (See Exhibit "4").  Anthony Kneisser testified that he did not know whether Judge McInerney was aware of the sign on the window on May 27th.  (See Exhibit "4"). Anthony Kneisser testified that when he was told he could be incarcerated, he was shocked and scared.  (See Exhibit "4").  Also, Kneisser testified that the Court did offer for Kneisser to make a call to someone to see if he could get the funds.  (See Exhibit "4").  Kneisser told the Court that he did not have any friends or family who could help him out.  (See Exhibit "4").

10

According to Mr. Kneisser, he was taken to jail cells in the courtroom. (See Exhibit "4").

He was handcuffed on the way to the cell. (See Exhibit "4"). He was not handcuffed in the cell.

(See Exhibit "4"). According to Mr. Kneisser, the basis of his claim was that he was "thrown in

jail … that it was an unconstitutional and illegal policy …" (See Exhibit "4"). According to

Kneisser, Judge McInerney was an official who made policies in the courtroom. (See Exhibit

"4").

Also, Mr. Kneisser testified that he has not incurred any medical expenses as a result of

the incident. He has not seen any doctors, and has not ever been medicated for any anguish or

panic attacks. (See Exhibit "4"). Mr. Kneisser testified that he has not sought any treatment for

his claims. (See Exhibit "4"). According to Mr. Kneisser, he was in the holding cell for a couple

of hours. (See Exhibit "4"). He testified that he asked the officer to make a phone call outside of

the holding cell. He then made the call, and spoke to his brother, George. (See Exhibit "4").

Anthony Kneisser testified that when he was before Judge McInerney, he told the Judge that he

did not have any friends who could help him out. He did not tell Judge McInerney that his father

would not help him out. (See Exhibit "4").

At his deposition, Mr. Kneisser was shown the Municipal Court transcript in which he

stated, "I don't have any friends that could help me out." (See Exhibit "4"). Kneisser testified

that it was never his intention to call his father. (See Exhibit "4"). He did not intend to call his

father because before he went to Court, he spoke to his father, who refused to help him out

monetarily. (See Exhibit "4"). That is why when the Municipal Court Judge questioned

Anthony, Anthony did not ask the Court for an opportunity to call his father, Dr. Kneisser. (See

Exhibit "4"). Anthony testified that he had no intention of calling his father for payment of the

fine. (See Exhibit "4"). At the end of the day, however, Dr. Kneisser did write the check to pay

the fine.  (See Exhibit "4").  Anthony's brother, George, obtained a check from Dr. Kneisser, brought it over to the Municipal Court, and payment was made.  (See Exhibit "4").

George Kneisser, M.D. testified at his deposition on November 22, 2016 that he is the father of Anthony Kneisser, the plaintiff in this case.  (See Stmt. of Material facts; see also, Exhibit "6").  Mr. Kneisser testified that his children are George, Margot, Joseph, Eli, and Anthony.  (See Exhibit "6").  At the time of the incident, Anthony worked as a cook, washed dishes, and was a student at Rutgers.  (See Exhibit "6").  According to Dr. Kneisser, Anthony was a student at Rutgers for two to three years, but did not obtain a degree.  (See Exhibit "6").  Also, Dr. Kneisser testified that Anthony took some courses at Delaware Tech.  (See Exhibit "6").  Dr. Kneisser explained that his son works as a driver for Snyder Trucking.  (See Exhibit "6").

On the date of the incident, Anthony was living in Delaware with his mother.  Anthony did tell his father that he got a ticket.  (See Exhibit "6").  Anthony told his father that he threw a cigarette butt from the window of the car, and that he received a ticket.  (See Exhibit "6").  At that point, Dr. Kneisser gave his son a lecture for (a) smoking; and (b) throwing the cigarette butt.  (See Exhibit "6").  Dr. Kneisser told his son, "It's your ticket.  You pay it.  You're working now."  (See Exhibit "6").  Dr. Kneisser made it clear to his son that he would not pay the ticket for Anthony.  (See Exhibit "6").  Anthony told his father that he wanted to make a deal with the Prosecutor and do community service, or "pay it as we go."  (See Exhibit "6").  Dr. Kneisser told his son to do community service or whatever it took.  (See Exhibit "6").  Dr. Kneisser told his son that if it took money, then Anthony would have to be the one who pays it.  (See Exhibit "6").

Dr. Kneisser knew that his son was going to Court on May 27, 2014.  (See Exhibit "6").  During the day, Dr. Kneisser's son, George, called and advised that Anthony was in jail.  At that

12

point, Dr. Kneisser laughed, thinking it was a joke.  (See Exhibit "6").  However, he then called

the Court, and was advised that the only way to get Anthony out was to pay the ticket.  (See

Exhibit "6").  At that point, Dr. Kneisser called his son, George, and told him to get a check, and

pay the ticket.  (See Exhibit "6").  At that point, George got the check, went to Burlington

Township, and Anthony was released.  (See Exhibit "6").  According to Dr. Kneisser, he saw his

son Anthony a day or two later.  (See Exhibit "6").

According to Dr. Kneisser his son was earning $9.00 per hour at Perkins, and was

bringing home on average $150.00-$200.00 per week.  (See Exhibit "6").  Dr. Kneisser testified

that his son made car and insurance payments, which cost him $400.00 (for the car payment and

insurance together).  (See Exhibit "6").  According to Dr. Kneisser, he did not ask his daughter,

Margot Kneisser, the plaintiff's attorney in this case, for any advice before Anthony went to

make a deal with the Prosecutor.  (See Exhibit "6").

Dr. Kneisser testified that his son, Anthony, has never treated with a psychiatrist or

psychologist as a result of the Municipal Court incident.  (See Exhibit "6").  Also, Anthony

Kneisser has never been hospitalized as a result of the Municipal Court incident.  (See Exhibit

"6").  In addition, Anthony has never received any psychological or psychiatric therapy as a

result of this incident.  (See Exhibit "6").  According to Dr. Kneisser, Anthony is angry and

nervous, and is afraid of Judges and the "whole system."  (See Exhibit "6").

Dr. Kneisser admitted that he did not know whether Judges, Municipalities, and

politicians were trying to increase revenues as a written policy.  He was simply guessing.  (See

Exhibit "6").  Dr. Kneisser made it clear to Anthony that he was not to rely on him for help.  It

was part of Dr. Kneisser's "lesson teaching thinking."  (See Exhibit "6").

13

Judge McInerney testified at his deposition on December 16, 2016 that he is the Municipal Court Judge for Burlington Township, Burlington City, Springfield Municipal Court, Riverside Municipal Court, and Fieldsboro Municipal Court.  (See Exhibit "7").  Previously, he served as the Municipal Court Judge in Mt. Holly Township, Shamong Township, South Hamilton, New Hanover, and Edgewater Park.  (See Exhibit "7").  Also, Judge McInerney is the Presiding Municipal Court Judge in Burlington County.  (See Exhibit "7").  He has held that position since 2013.  (See Exhibit "7").

It is part of Judge McInerney's obligation to monitor the Municipal Court budget process and submissions to the Assignment Judge, and to ensure upon adoption of the budget that the Municipal Courts in the County would have sufficient resources to operate properly.  (See Exhibit "7").  Each year a Municipal Court must submit a budget to the Municipal Division on a form prepared by the AOC.  (See Exhibit "7").  That is submitted to the Municipal Division, and Judge McInerney reviews it.  He then discusses it with the Assignment Judge to be sure that there are adequate funds for the Municipal Courts to properly operate.  (See Exhibit "7").  Funds in the budget come from the Municipalities.  The AOC makes sure that there is adequate funding to run the Court, including Court personnel.  (See Exhibit "7").  If it was decided that staffing was inadequate, the AOC may tell them to add additional monies into the budget.  (See Exhibit "7").

Training takes place for Municipal Judges a couple of times a year on a mandatory basis. (See Exhibit "7").  Judge McInerney reports to the Assignment Judge.  (See Exhibit "7").

In addition, there are monthly reports generated by the AOC as to the number of cases disposed of.  Those reports are reviewed, and Judge McInerney will meet with the individual Municipal Court Judge or a Court Administrator to discuss any backlog problems.  (See Exhibit

14

"7").  Also, Judge McInerney is responsible to review citizen grievances and complaints.  (See Exhibit "7").

Judge McInerney testified that in connection with Mr. Kneisser's fine, he imposed the minimum mandatory penalty.  (See Exhibit "7").  Judge McInerney recalled that Kneisser's demeanor in the courtroom was very disrespectful.  (See Exhibit "7").  The Judge explained that Kneisser did ask about community service, and was "… kind of playing to the crowd…"  (See Exhibit "7").  According to the Judge, Kneisser was trying to get a reaction from the crowd in the courtroom.  (See Exhibit "7").  Kneisser stated that he was guilty before he asked for community service.  (See Exhibit "7").

Also, Judge McInerney stated that he did not know anything about the sign.  He only became aware of it after they received Kneisser's Complaint.  (See Exhibit "7").  After receiving the Complaint, he went out, looked at the sign, and told them to take it down.  (See Exhibit "7").  He told them to take it down because it was not the Court's policy.  (See Exhibit "7").  He explained that they follow the AOC policy.  (See Exhibit "7").  The Judge stated that if the defendant is not able to make a payment that day, other arrangements are made for payment.  (See Exhibit "7").

Judge McInerney also explained that procedures are set by the AOC.  (See Exhibit "7").  In this instance, when Judge McInerney reviewed Kneisser's 5A Form, he asked Kneisser to come back up to the bench, and asked how much he would be paying that day.  (See Exhibit "7").  Kneisser responded that he would be making a payment in early June, and the Court told him that he needed to make a payment that day, May 27.  (See Exhibit "7").  Judge McInerney explained that Kneisser did not give him a specific date in June when he would be paying, nor

did he give a specific amount that he was going to pay.  (See Exhibit "7").  Kneisser was not

specific as to when and how he was going to pay the fines.  (See Exhibit "7").  Kneisser did not

make a specific proposal.  Judge McInerney explained that Kneisser was refusing to pay, and had

made a comment which got a reaction from other people in the courtroom.  The Court found

Kneisser to be disrespectful.  (See Exhibit "7").  It was obvious to the Court that Kneisser was

attempting to avoid payment by not giving specifics, and by not being willing to make a phone

call.  (See Exhibit "7").

The Court did not think that Kneisser was being straightforward with the Court.  (See

Exhibit "7").  Kneisser was unwilling to make a phone call, and was trying to avoid payment of

the fine.  (See Exhibit "7").  A defendant is asked to go out and make a phone call.  (See Exhibit

"7").  Sometimes a defendant is asked to sit and wait until the end of the Court session so that the

Court can talk to them again.  (See Exhibit "7").  It was obvious to the Court that Kneisser was

not taking the matter seriously, and wanted to avoid payment of the fines.  (See Exhibit "7").

When the Court asked Kneisser if he would make a payment, Kneisser indicated that he

would not.  When he asked when Kneisser would make a payment, Kneisser "… kind of blew

me off every question I asked him.  And I asked him to go make a phone call, and he said, again,

it was kind of off-hand, I don't have anybody to call.  And then he said something to the people

in the courtroom."  (See Exhibit "7").

Judge McInerney recalled receiving the letter of October 29, 2014 from the Assistant

Prosecutor, Bethany Deal, regarding the outcome of the Municipal Court appeal.  (See Exhibit

"7").  Judge McInerney testified that, in retrospect, his reaction to the disrespectful conduct of

Kneisser in Court was perhaps too punitive, and upon reflection he should have handled the

matter differently.  (See Exhibit "7").  The Judge realized that after he imposed sentence, he

asked the Court Administrator if Kneisser was still in the back.  He wanted Kneisser to come out.  However, Kneisser had already paid his fines and left.  (See Exhibit "7").

Judge McInerney never intended for Kneisser to actually go to jail.  (See Exhibit "7").  His intention was to speak to Kneisser again on the record, and make some arrangement for payment of the fine.  (See Exhibit "7").  Judge McInerney intended to speak to Kneisser again later in the Court session to come to an agreement on how he was going to pay the fines.  He indicated that he rarely sentences people to jail.  (See Exhibit "7").  He also never had another case where he sentenced someone to jail on a first appearance.  (See Exhibit "7").

Judge McInerney explained that the Municipal Court is a separate branch under the supervision of the Administrative Office of the Courts.  (See Exhibit "7").  The relationship between the Court and the Township is that the Township provides facilities, offices, and equipment.  The Township also hires and provides employees for the Court.  They are employed by the Township.  (See Exhibit "7").  Judge McInerney explained that the Municipal Court prepares an annual budget based on an AOC budget form.  (See Exhibit "7").  It is reviewed by the Assignment Judge, who approves the same.  (See Exhibit "7").  Then, it is submitted to the Township, which reviews budget requests.  (See Exhibit "7").

Judge McInerney testified that he presents his budget once a year.  (See Exhibit "7").  It is submitted to the Township.  (See Exhibit "7").  Judge McInerney testified that he has never had a conversation with the Township Administrator about revenues.  (See Exhibit "7").  Fines taken in are distributed by the Township, whether it be to the State, the County, the Municipality, the Division of Fish & Game, and Public Defender Fund.  (See Exhibit "7").  The Judge explained that Burlington Township follows the AOC procedures concerning collection of fines as do all of the other Courts in the County that he sits in.  (See Exhibit "7").

17

Judge McInerney explained that, as the supervising Judge, keeps the Municipal Judges in the County informed of new laws and procedures, and also investigates Complaints against Municipal Court Judges.  (See Exhibit "7").  Also, in Burlington Township, he has never had any communications with anyone from the Township about whether revenue is meeting or exceeding anticipated revenue.  (See Exhibit "7").  Judge McInerney has never felt pressure to increase or maintain revenue generated by the Municipal Court from the Township.  (See Exhibit "7").

Mayor Brian J. Carlin testified at his deposition on December 21, 2016 that the Municipal Court is an entity which is separate and distinct.  He explained that it is the third branch of government, the judicial side.  (See Carlin Dep., Exhibit "8").  The Mayor explained that the Judge is appointed, and staff is hired.  The Township provides the building, support staff, and police.  However, the Mayor has no authority within the judicial function.  That is left to the Administrative Office of the Courts.  (See Exhibit "8").  The Municipal Court budget is part of the Township's general budget.  (See Exhibit "8").  Police officers are provided to be sure that the Court is secure.  (See Exhibit "8").  They Mayor testified that Judge McInerney has been re-appointed.  (See Exhibit "8").

The Mayor testified that the determination and penalties issued by the Court are solely the Court's determinations.  (See Exhibit "8").  The Mayor has no input about what the Judge does.  (See Exhibit "8").

Regina Brewton testified that she works at the Burlington Township Municipal Court as a Violations Clerk.  (See Brewton Dep., Exhibit "9").  Ms. Brewton recalled Kneisser in Court on the date in question.  (See Exhibit "9").  She also recalled that the Judge told Kneisser to go out and make a phone call, and Kneisser stated that there was nobody to call.  (See Exhibit "9").  Ms. Brewton recalled that Kneisser had an attitude.  (See Exhibit "9").  She testified that after the

18

courtroom they got Kneisser's file back, and someone came to the window to pay his fines.  (See Exhibit "9").  As the Court Administrator, she never observed Judge McInerney sentence a defendant to jail for not making a phone call, or for not making a payment.  (See Exhibit "9").  She understood that the Municipal Court is separate from the Township.  (See Exhibit "9").

Steven Matthews testified he was employed at the Burlington Township Municipal Court as a Violations Clerk.  (See Matthews Dep., Exhibit "10").  He was employed there for approximately two years.  (See Exhibit "10").  He never observed Judge McInerney sentence a defendant to jail for non-payment of fines and fees.  (See Exhibit "10").  He recalled that Judge McInerney would order defendants to make a phone call to see what they could come up with for a fine.  (See Exhibit "10").

Lizette Ortiz testified that she is employed as a Violations Clerk.  (See Ortiz Dep., Exhibit "11").  She recalled being in the courtroom on the date of the incident.  (See Exhibit "11").  She testified that it is routine for Judge McInerney to order defendants to make a phone call.  (See Exhibit "11").  She explained that people who want to make time payments fill out a 5A Form, and then are sent back into the courtroom to speak with Judge McInerney.  (See Exhibit "11").  She recalled that, in this instance, Judge McInerney did review Kneisser's 5A Form with Kneisser.  (See Exhibit "11").  Ms. Ortiz recalled that on the date of the incident, Kneisser was very loud, and indicated that he was not paying the fine.  (See Exhibit "11").

## ARGUMENT

### *I.* THE SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate if the record shows "that there was no genuine issue as to any material fact, and that the movant is entitled to Judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (in deciding a Motion for Summary Judgment, the Court considers the facts drawn from "the pleadings, the discovery, and disclosure

19

materials, and in the Affidavits", and must "view the inferences to be drawn from the underlying

facts in the light most favorable to the party opposing the Motion.")  Fed. R. Civ. P. 56(c);

Curley v. Klem, 298 F. 3d 271, 276-77 (3d Cir. 2002).

      The Court must determine "whether the evidence presents a sufficient disagreement to

require submission to a jury, or whether it is so one-sided that one party must prevail as a matter

of law."  Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986).  Summary Judgment should

be granted if the evidence available would not support a jury verdict in favor of the non-moving

party.  Id. at 248-49.  In other words, the non-moving party must "make a showing sufficient to

establish the existence of an element essential to that party('s) case, and on which that party will

bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## II.  AN ORDER FOR SUMMARY JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEFENDANT JUDGE MCINERNEY UNDER THE DOCTRINE OF JUDICIAL IMMUNITY

      In Figueroa v. Blackburn, 208 F. 3d 435 (3d Cir. 2000), the Third Circuit held that New

Jersey Municipal Court Judges are afforded absolute immunity for their judicial acts.  In

Figueroa, the plaintiff, Robert Figueroa, appeared before the Honorable Audrey P. Blackburn,

J.M.C., the Municipal Court Judge in Trenton Municipal Court, Mercer County, New Jersey, for

an arraignment on two counts of harassment, in violation of N.J.S.A. 2C:33-4(a), petty disorderly

persons offenses.  Figueroa was charged with the offenses after sent a harassing letter and

documents to two New Jersey Superior Court Judges who had previously handled his divorce

and child custody dispute.  When he appeared before Judge Blackburn, Figueroa stated that he

was not there to enter a plea, but to challenge the jurisdiction of the Municipal Court over the

offenses with which he was charged.  Before he could begin his argument, Judge Blackburn

directed him on three occasions to turn off his tape recorder.  Figueroa did not do so.  As a result,

Judge Blackburn ordered that Figueroa be arrested and removed from the courtroom.

Then, in an Order following Figueroa's arrest, Judge Blackburn held him in contempt of Court, and sentenced him to be in prison for 30 days at the Mercer County Corrections Center. Although the Municipal Court Judge was mandated to stay execution of the sentence by New Jersey Court Rule 1:10-1 (Execution of sentence shall be stayed for five days following imposition and, if an appeal is taken, during the pendency of the appeal, provided however that the Judge may require bail if necessary to assure the contemnor's appearance."), Judge Blackburn did not do so.  Nor did Judge Blackburn set bail.  So, by failing to follow the requirements of N.J. Ct. R. 1:10-1, Judge Blackburn hampered Figueroa's ability to seek the immediate appellate review intended by the Rule.

While he was in jail, Figueroa, with the assistance of counsel, twice attempted to have Judge Blackburn stay the balance of his sentence.  Both times his attempts were rebuffed.  The second to last attempt came on July 19, 1996 when Figueroa again appeared before Judge Blackburn for the arraignment on the harassment charges.  In response to his request, Judge Blackburn simply noted that the issue would be resolved by the Superior Court.  Then, Figueroa filed an appeal to the Superior Court for a *de novo* review of his conviction and sentence for contempt.  On July 22, 1996, after having served 15 days of a 30 day sentence, he was granted a stay pending appeal, and released on bail.  Ultimately, his contempt conviction was reversed.

On August 14, 1996, while his appeal was pending, Figueroa appeared before a different Municipal Court Judge, the Honorable Samuel Sachs, for trial on the harassment charges. Before trial began, Judge Sachs discussed the directive of the Honorable Robert N. Wilentz, which provided for the transfer of any case involving a Complaint against or on behalf of a Judge, or a member of his or her immediate family, or any case in which a Judge was to be a witness to the Assignment Judge of the County in which the case was docketed.  Because the

21

Assignment Judge was an alleged victim of Figueroa's harassment, Judge Sachs did not commence the trial.  Rather, he referred the case to the Superior Court of Mercer County so that it could be reassigned to an acting Assignment Judge, or transferred to a different County.  The harassment charges were subsequently dismissed.

Then, Figueroa filed the action against Judge Blackburn on July 29, 1999 in the United States District Court for the District of New Jersey.  Figueroa sought damages for deprivation of his constitutional rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article I, paragraphs 6, 7, 10 and 12 of the New Jersey State Constitution.  Figueroa's Complaint alleged that his arrest for contempt was contrary to the Statutes and Rules by which Judge Blackburn was bound, and at no time did the Municipal Court Judge have jurisdiction to do what she did.

Judge Blackburn moved for Summary Judgment on the ground that she was entitled to judicial immunity.  The Motion was decided by Magistrate, now Judge, Freda L. Wolfson.

On March 10, 1999, Judge Wolfson granted the Motion for Summary Judgment in Figueroa v. Blackburn, 39 F. Supp. 2d 479, 483 (D.N.J. 1999).  The Third Circuit affirmed that Order for Summary Judgment.  The Court granted Summary Judgment, notwithstanding the fact that the Municipal Court Judge erred in immediately ordering Figueroa to prison, for violating N.J.S.A. 2C:33-4(a), a petty disorderly offense.

Judge Wolfson found that the arrest and Contempt Order which sentenced Figueroa to prison were judicial acts.  Id. at 486.  Also, Judge Wolfson found that Judge Blackburn was entitled to clear judicial immunity.  The Court also found that Judge Blackburn did not act in the clear absence of jurisdiction.  Judge Wolfson rejected Figueroa's argument that the Wilentz directive had divested Judge Blackburn of jurisdiction.  Judge Wolfson also found that although

22

the contempt citation was procedurally deficient, the existence of procedural errors plays no part in the judicial immunity analysis.  Id. at 493, 495 (noting that "the public policy favoring the Judicial Immunity Doctrine outweighs any consideration given to the fact that a Judge's errors caused the deprivation of an individual's basic due process rights").

Figueroa then filed his appeal.  Figueroa argued that the Municipal Court Judge lacked immunity.  However, even if she had it, immunity only applies when a Judge is acting within their jurisdiction.  Figueroa argued that the Municipal Court Judge was acting in the absence of subject matter jurisdiction over the offenses.  Figueroa argued that Judge Blackburn did not have jurisdiction to order the immediate arrest without granting a five-day stay of sentence, and that her act in doing so was a non-judicial act.

In their opinion, the Third Circuit noted:

> It is a well-settled principle of law that Judges are generally "immune from a suit for money damages."

Figueroa, citing Mireles v. Waco, 502 U.S. 9 (1991); Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536 (1868):

> "This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice").  The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her official duties, should be free to act upon his or her convictions without threat of suit for damages.  See, Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1872).

Figueroa, 208 F. 3d at 440.

The Mireles Court noted, "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."  Mitchell v. Forsythe, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985).  The Mireles Court noted that judicial immunity is not overcome by allegations of bad faith or malice.  Mireles, 502 U.S. at 11 (citing, Pierson v. Ray, 386 U.S. at 554) ("Immunity applies even when the Judge is accused of acting

23

maliciously and corruptly"); Harlow v. Fitzgerald, 457 U.S. 800, 815-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (allegations of malice are insufficient to overcome qualified immunity).

In Mireles, defendant Waco was called into the courtroom for purposes of a pending case. Therefore, he was dealing with Judge Mireles in the Judge's judicial capacity.  See, Mireles, 502 U.S. at 11.  As noted by the Supreme Court in Stump v. Sparkman, 435 U.S. at 356, a Judge is not deprived of immunity because the action he took was in error or was in excess of his authority.  Also, in Forrester v. White, 484 U.S. 227, the Court held that a judicial act does not become less judicial by virtue of an allegation of malice, corruption, or motive.

The Appellate Division has held that members of the judiciary are immune from suit based upon the performance of their judicial functions.  A.V. v. Ashrafi, 2015 N.J. Super. Unpub. LEXIS 1444 (BER-C- 58-15) (Ch. Div. June 11, 2015), citing Mireles v. Waco, 502 U.S. 9-12 (1991); Ingram v. Twp. of Deptford, 858 F. Supp. 2d 386, 390 (D.N.J. 2012) ("[J]udges acting in their judicial capacity are absolutely immune in both their individual and official capacities from suit for monetary damages under the Doctrine of Judicial Immunity").  Hawkins v. Harris, 141 N.J. 207, 214 (1995); Pierson v. Ray, 386 U.S. 547, 554 (1967).

Also, the A.V. Court noted that a Judge is not deprived of immunity even if the action he took was in error, was done maliciously, or was in excess of his authority.  A.V., citing Pasqua v. Council, 186 N.J. 127, 150 (2006).

Next, in Jaye v. Judge Yolanda Ciccone, A-3817-13T2 (App. Div. February 25, 2016) (slip op. attached and marked Exhibit "12"), the plaintiff was dissatisfied with the Judge's ruling in litigation he instituted against the Condominium Association, its Board, and legal counsel. Plaintiff alleged various constitutional violations based upon decisions the Judge made after being assigned to the case subsequent to the retirement of Judge Buchsbaum.  Jaye requested

24

injunctive and declaratory relief, including voiding and vacating Court Orders.  He also sought

relief enjoining the Judge.  Judge Ciccone filed a Motion to Dismiss Jaye's civil suit for failure to

state a claim.  Judge Innes granted Judge Ciccone's Motion to Dismiss, and later denied

plaintiff's Motion for Reconsideration.

The <u>Jaye</u> Court noted, "Few doctrines were more solidly established at common law than

the immunity of judges from liability for damages for acts committed within their judicial

jurisdiction."  <u>Jaye</u>, slip op. at p. 5, citing <u>Cleavinger v. Saxner</u>, 474 U.S. 196, 1999, 106 S. Ct.

496, 499-500, 88 L. Ed. 2d 507, 513 (1985) (quoting, <u>Pierson v. Ray</u>, 386 U.S. 547, 553-54, 87

S. Ct. 1213, 1217, 18 L. Ed. 2d 288, 294 (1967)).  The <u>Jaye</u> Court noted that the immunity is

absolute.  <u>Jaye</u>, slip op. at p. 5, citing <u>K.D. v. Bozarth</u>, 313 N.J. Super. 561, 568 (App. Div.),

<u>certf</u>. <u>denied</u>, 156 N.J. 425 (1998).  The <u>Jaye</u> Court also, in citing <u>Mireles</u>, noted that judicial

immunity is an immunity from suit, not just from ultimate assessment of damages.  <u>Mireles</u>, 502

U.S. at 9.

The <u>Jaye</u> Court noted that immunity applies even to judicial acts that are wrong,

malicious, or beyond the Judge's authority.  <u>Jaye</u>, slip op. at p. 5, citing <u>K.D.</u>, <u>supra</u>., 313 N.J.

Super. at 568; <u>Delbridge v. Schaeffer</u>, 238 N.J. Super. 323, 334 (Law Div. 1989).  In <u>Jaye</u>, the

Appellate Division noted that the Supreme Court has explained:

> The doctrine that an action will not lie against a judge for a
> wrongful commitment, or for an erroneous judgment, or for any
> other act made or done by him in his judicial capacity, is as
> thoroughly established as are any other of the primary maxims of
> the law.  Such an exemption is absolutely essential for the very
> existence, in any valuable from, of the judicial office itself; for a
> judge could not be either respected or independent if his motives
> for his official actions or his conclusions, no matter how erroneous,
> could be put in question at the instance of every malignant or
> disappointed suitor.  Hence we find this judicial immunity has
> been conferred by the laws of every civilized people.  That it exists
> in this state in its fullest extent, has been repeatedly declared by

25

our own courts.  [Bedrock Foundations, Inc. v. Geo. H. Brewster &
Son, Inc., 31 N.J. 124, 139-40 (1959) (quoting Grove v. Van Duyn,
44 N.J.L. 654, 656 (E&A 1882)].

Therefore, in Jaye, the Appellate Division affirmed the Trial Court, and found that the

facts set forth in the Complaint failed to state a claim.  The Court also found that Jaye's

arguments regarding declaratory and injunctive relief, jurisdiction, and fraud were without

sufficient merit to warrant discussion in a written opinion.  Jaye, slip op. at p. 6.

Also, in Figueroa, the Third Circuit noted:

> The Supreme Court has made it clear that "judges of courts of
> superior or general jurisdiction are not liable to civil actions for
> their judicial acts, even when such acts are in excess of their
> jurisdiction, and are alleged to have been done maliciously or
> corruptly."

Stump v. Sparkman, 435 U.S. 349, 355-56, 55 L. Ed. 2d. 331, 98 S. Ct. 1099 (1978).  (quoting,

Bradley, 80 U.S. (13 Wall.) at 351).

The Figueroa Court noted that a Judge is not immune from liability for non-judicial acts,

i.e., actions not taken in the Judge's judicial capacity.  Also, a Judge is not immune for actions,

though judicial in nature, taken in the complete absence of all jurisdiction.  Figueroa, citing

Mireles, 502 U.S. at 11-12.

In Figueroa, the Third Circuit noted that Judge Blackburn, as a Municipal Court Judge,

was a Judge of a Court of limited jurisdictions.  The Third Circuit also noted that Municipal

Courts in New Jersey are statutorily created pursuant to N.J.S.A. 2B:12-1.  The Figueroa Court

noted that their limited jurisdiction is set forth at N.J.S.A. 2B:12-17.  As noted in Figueroa, a

Municipal Court has jurisdiction over violation of the motor vehicle and traffic laws.  Figueroa,

208 F. 3d at 440.

26

The Figueroa Court found that the role of a Judge of a Court of limited jurisdiction is "functionally comparable" to that of a Judge of a Court of general jurisdiction.  Figueroa, 208 F. 3d at 441.

The Figueroa Court noted that, in New Jersey, Municipal Court proceedings are subject to de novo review by the Superior Court, and the traditional avenues of appellate review are therefore available.  Citing, N.J. Ct. RR. 3:23, 3:24, and 7:13-1.  Figueroa, 208 F. 3d at 442.

The Figueroa Court also noted that other Circuit Courts had found that judicial immunity can be applied to Courts of limited jurisdiction.  Figueroa, 208 F. 3d at 442.

Also, the Figueroa Court (citing, Stump, 435 U.S. at 363), noted that "the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice … [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  Stump, 435 U.S. at 363.  The Figueroa Court noted that immunity is an indispensable ingredient in the proper administration of justice.  (Citing, Butz v. Economou, 438 U.S. 478 (1978)).

The Third Circuit concluded that Judges of Courts of limited jurisdiction are entitled to protection under the Doctrine of Judicial Immunity.  The Figueroa Court also found that Judge Blackburn's order that the sentence for contempt of Court be executed on the spot was a judicial act.  The plaintiff had argued that under N.J. Ct. R. 1:10-1, the Power of a New Jersey State Court to order the immediate service of a sentence for contempt is restricted.  The plaintiff further argued that execution of a sentence should be stayed for five days following imposition to allow the defendant to appeal, and would be further stayed if an appeal was in fact taken.  The Third Circuit noted that even though Judge Blackburn may have erred in immediately ordering Figueroa to prison, that did not alter the judicial nature of the act.  Figueroa, 208 F. 3d at 443.

27

The Third Circuit also noted that the factors which determine whether an act is a "judicial act" "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity." Figueroa, 208 F. 3d at 443, citing Stump, 435 U.S. at 362.

The Third Circuit in Figueroa noted that because Figueroa was brought before Judge Blackburn for the purpose of being arraigned, he was before her and dealing with her in her judicial capacity. The Court noted, "Ordering him to prison was a paradigm judicial act, and that act does not become non-judicial because it was wrong." Figueroa, 208 F. 3d at 443.

Also, in Figueroa, the Court noted that the Municipal Court Judge had jurisdiction over the disorderly persons offense.[1] This was not a situation where Judge McInerney acted in the complete absence of jurisdiction. Figueroa, 208 F. 3d at 443, citing Figueroa, 39 F. Supp. 2d at 495. The Third Circuit, relying on Stump, noted that the Supreme Court has held that jurisdiction must be construed broadly where the issue is the immunity of the Judge. As noted in Stump:

> A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

Stump, 435 U.S. at 356-57.

The Figueroa Court noted that where the Court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Figueroa, 208 F. 3d at 444 (citing, Barnes v. Winchell, 105 F. 3d 1111, 1122 (6th Cir. 1997). In Figueroa, the Municipal Court Judge had jurisdiction, the same as Judge McInerney had jurisdiction in this case. Everything Judge McInerney did in this matter was clearly within his jurisdiction, duties, and responsibilities,

---

[1] In this case, Judge McInerney had jurisdiction over the motor vehicle and traffic law violations to which Kneisser pled guilty. See, N.J.S.A. 2B:12-17.

28

either as the Municipal Court Judge in Burlington Township.  As noted by the Figueroa Court, it is irrelevant for purposes of jurisdiction whether the Judge's determination was right or wrong. Figueroa, 208 F. 3d at 444.

The Third Circuit noted that even though Judge Blackburn ignored the New Jersey Supreme Court's protocol for exercising summary contempt powers (see In Re Daniels, 118 N.J. 51 (1990)), she was still immune.  The Third Circuit noted that at the time of Figueroa's arrest, Judge Blackburn neither provided him with a reason for his arrest, nor permitted him the opportunity to explain his actions.  Figueroa, 208 F. 3d at 444.[2]

Also, the Third Circuit rejected Figueroa's argument that Judge Blackburn's failure to grant him the five day stay required by N.J. Ct. R. 1:10-1, because it was in error, was an act taken in the absence of jurisdiction.  The Third Circuit noted that, if accepted, this would mean that whenever a Judge makes an error of law or procedure in a matter before him, that Judge is not entitled to judicial immunity.  Stated differently, plaintiff's argument, if accepted, would mean that a Judge does not have jurisdiction to make a mistake.  Figueroa, 208 F. 3d at 444-45.

The Third Circuit noted that Figueroa's argument was simply "preposterous".  Figueroa, 208 F. 3d at 445.  The Third Circuit further noted that Judge Blackburn's failure to adhere to the requirements of N.J. Ct. R. 1:10-1 was an "inexplicable" procedural flaw.  Figueroa, 39 F. Supp. 2d at 494.  However, because Judge Blackburn had jurisdiction over the matter before her, she had jurisdiction to err and, therefore, was entitled to judicial immunity.  Figueroa, 208 F. 3d at 445.  The same is true in this case with respect to Judge McInerney.  In any event, in Figueroa, the Third Circuit affirmed Judge Wolfson's Order for Summary Judgment.  Accordingly, this Court should now grant Judge McInerney's Motion for Summary Judgment.

_____

[2] In this case, plaintiff understood the charge and pled guilty to the charge.  The Court explained the fines to Kneisser, and permitted him the opportunity to make a phone call.

Also, in <u>Capogrosso v. Supreme Court of N.J.</u>, 588 F. 3d 180 (3d Cir. 2009), the Third

Circuit noted, "A judicial officer in the performance of his duties has absolute immunity from

suit and will not be liable for his judicial acts."  <u>Capogrosso</u>, 588 F. 3d at 184 (citing, <u>Azubuko v.</u>

<u>Royal</u>, 443 F. 3d 302, 303 (3d Cir. 2006)).  The <u>Capogrosso</u> Court, like the <u>Figueroa</u> Court, also

noted that a Judge is not deprived of immunity because the action he took was in error, was don

maliciously, or was in excess of his authority.  <u>Capogrosso</u>, 588 F. 3d at 184 (citing, <u>Stump v.</u>

<u>Sparkman</u>, 435 U.S. 349, 356-57 (1978)).

In this case, all of the allegations against Judge McInerney must be dismissed on

Summary Judgment under the Doctrine of Judicial Immunity.  Plaintiff makes the argument, in a

feeble attempt to avoid the Doctrine of Judicial Immunity, that Judge McInerney is somehow

liable personally.  (See Count VII of Complaint, Exhibit "1").  However, this is simply labeling,

and such an attempt should be rejected by this Court.  By even alleging Count VII, it shows that

plaintiff is grasping at straws.  Labeling the actions of Judge McInerney as personal do not, in

any respect, get around the Doctrine of Judicial Immunity.  Accordingly, all of the claims

asserted by plaintiff in his Complaint against Judge McInerney should be dismissed, with

prejudice, including those under 42 <u>U.S.C.</u> §1983 (Counts I and II); the claims for due process

and equal protection in violation of the New Jersey Civil Rights Act asserted in Count III; Count

IV – fine only offense; Count V – right to counsel[3]; Count VI – intentional misconduct; and

Count VII – personal liability of Judge McInerney.

In <u>A.V. v. Ashrafi</u>, 2015 N.J. Super. Unpub. LEXIS 1444 (Ch. Div. BER-C-58-15 June

11, 2015), the plaintiff alleged that a panel of Appellate Judges violated the New Jersey Civil

Rights Act by including allegedly confidential information in a published opinion.  The Court

noted that <u>N.J.S.A.</u> 10:6-1 to 2 was adopted by the Legislature "for the broad purpose of assuring

---

[3] Judge McInerney is immune from such a claim under <u>Figueroa</u>, 208 F. 3d 435.

30

a State law cause of action for violations of State and Federal constitutional rights, and to fill any gaps in the State statutory anti-discriminatory protection."  A.V., 2015 N.J. Super. Unpub. LEXIS 1444 (Ch. Div. BER-C-58-15 June 11, 2015) (citing, Owens v. Feigin, 194 N.J. 607, 611 (2008)).  The A.V. Court noted that the New Jersey Civil Rights Act was modeled after 42 U.S.C. §1983, citing Perez v. Zagami, LLC, 218 N.J. 202, 213 (2014).

Also, the A.V. Court noted that New Jersey Courts apply §1983 immunity doctrines to claims arising under the New Jersey Civil Rights Act.  A.V., 2015 N.J. Super. Unpub. LEXIS 1444 (Ch. Div. BER-C-58-15 June 11, 2015), citing Gormley v. Wood-El, 218 N.J. 72, 113 (2014).  In A.V., Judge Contillo noted that a State is not a "person" within the meaning of §1983, citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).  In A.V., Judge Contillo found as follows:

> While state officials, such as judges, are literally persons, "a suit against a state official in his or her official capacity is not a suit against the official, but rather is suit against the official's office. Id. at 71.  Therefore, neither a State nor its officials acting in their official capacities are persons amenable to suit under §1983 or the New Jersey Civil Rights Act.  Ibid. (Finding that the Director of the Michigan State Police, in his official capacity, was immune to suit under §1983) the Court dismisses all claims as against the judiciary defendants.

In this case, the claims for a declaration that a "policy" of Judge McInerney and the other defendants be declared unconstitutional is not a viable claim against Judge McInerney under the Doctrine of Judicial Immunity.  (See VII of Complaint, Exhibit "1").  The claims for an injunction against Judge McInerney in Burlington Township Municipal Court and their employees also is not a viable claim against Judge McInerney, and must be dismissed as well. The plaintiff's Complaint seeking a ruling that the actions of Judge McInerney were unconstitutional also must be dismissed.  Also, all damage claims for pain, suffering, stress,

31

humiliation, mental anguish, and punitive damages must be dismissed since Judge McInerney is immune from such damage claims.

## **CONCLUSION**

For the reasons expressed above, it is respectfully submitted that an Order for Summary Judgment should be entered in favor of defendant, The Honorable Dennis P. McInerney, dismissing plaintiff's Complaint, with prejudice, and without costs to the parties.

A proposed Order is attached.  Oral argument is requested.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
Attorneys for Defendant, The Honorable
Dennis P. McInerney, Individually

*/s/ John L. Slimm*

BY:_____
JOHN L. SLIMM

Dated:  May 16, 2017

32