# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY KNEISSER,

                    Plaintiff,

         v.

THE HONORABLE DENNIS P.
MCINERNEY, et al.,

                    Defendants.

Civil Action No.: 15-7043 (NLH/ AMD)

### JURY TRIAL DEMANDED

---

### PLAINTIFF ANTHONY KNEISSER'S MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT
### PURSUANT TO FED. R. CIV. P. 56

### *ORAL ARGUMENT IS HEREBY REQUESTED*
### PURSUANT TO L. CIV. R. 78.1(b)

---

Marguerite Kneisser, Esq.
Alexi Machek Velez, Esq.
*On the Brief*

# TABLE OF CONTENTS

STANDARD OF REVIEW ................................................................................................ 1

ARGUMENT .................................................................................................................... 2

   **I.   DEFENDANTS VIOLATED PLAINTIFF'S CIVIL RIGHTS.**................................... 2

     A. Defendants Were at All Relevant Times "Persons" Acting Under Color of State Law..... 4

     B. Defendants Deprived Plaintiff of His Rights to Due Process and Equal Protection. ......... 5

     C. Defendants Deprived Plaintiff of his Right to Counsel. ................................................... 11

     D. Defendants violated Plaintiff's Fourth Amendment Rights by Seizing his Person and Property through Arrest and Booking, Searching Plaintiff's Person, and Jailing Plaintiff Without Probable Cause. ........................................................................................ 14

   **II.   DEFENDANT BURLINGTON TOWNSHIP IS LIABLE FOR PLAINTIFF'S DAMAGES ARISING OUT OF THE UNCONSTITUTIONAL POLICY ESTABLISHED BY JUDGE MCINERNEY AND ROSA HENRY.** ................................ 16

   **III.   EVEN IF PLAINTIFF WAS THE ONLY INDIVIDUAL SUBJECT TO SUCH A DEPRIVATION OF HIS RIGHTS UNDER DEFENDANTS' POLICY, DEFENDANTS ARE LIABLE.** ................................................................................ 19

CONCLUSION ............................................................................................................... 21

## CASES

Amnesty America v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004) ............................ 20, 21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ................................................. 2

Argersinger v. Hamlin, 407 U.S. 25 (1972) ................................................................. 12

Bearden v. Georgia., 461 U.S. 660 (1983) ............................................................. passim

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .......................................................... 2

Friedland v. Fauver, 6 F. Supp. 2d 292 (D.N.J. 1998) ................................................ 8

Griffin v. Illinois, 351 U.S. 12 (1956) (plurality opinion) ......................................... 5

Griffin v. Maryland, 378 U.S. 130, 135 (1964) ........................................................ 5

Groman v. Township of Manalapan, 47 F.3d 628 (3d Cir. 1995) ................................ 3

Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) ........................................ 17

Hines v. Albany Police Dep't., 520 Fed. Appx. 5 (2d Cir. 2013) ................................ 18

Lassiter v. Dep't of Soc. Sec'ys, 452 U.S. 18 (1981) ................................................ 11

Laverdure v. County of Montgomery, 324 F.3d 123 (3d Cir. 2003) ........................... 17

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) .................................................. 4

Malley v. Briggs, 475 U.S. 335 (1986) .................................................................... 15

Mancini v. Northampton Cnty., 836 F.3d 308 (3d Cir. 2016) .................................... 2

Mark v. Borough of Hatboro, 51 F.2d 1137 (3d. Cir.), cert. denied, 516 U.S. 858 (1995) .... 20, 21

McGreevy v. Stroup, 413 F.3d 359 (3d Cir. 2005) ................................................... 17

Messerschmidt v. Millender, 565 U.S. 535 (2012) ................................................... 15

Michigan v. Harvey, 494 U.S. 344 (1990) ............................................................... 12

Monell v. New York City Department of Social Services, 436 U.S. 654 (1978) ......... 4, 16, 17, 20

Morris v. Schoonfield, 399 U.S. 508 (1970) ............................................................ 6

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950) ............................................. 8

Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)..................................................................... 17

Owen v. City of Independence, 445 U.S. 622 (1980)....................................................................... 17

Parkell v. Danberg, 833 F.3d 313 (3d Cir. 2016) ............................................................................ 2

Pasqua v. Council, 186 N.J. 127 (2006) ........................................................................................... 12

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)................................................................. 17, 20

Polk County v. Dodson, 454 U.S. 312 (1981) ............................................................................... 4, 19

St. Louis v. Praprotnik, 485 U.S. 112 (1988) (plurality opinion) ........................................... 19, 21

State v. De Bonis, 58 N.J. 182 (1971) ............................................................................................... 8

State v. Hermanns, 278 N.J. Super. 19 (App.Div.1994)................................................................... 13

State v. Smith, 408 N.J. Super. 484 (App. Div. 2009)...................................................................... 13

Tate v. Short, 401 U.S. 395 (1971) ............................................................................................... 5, 6

Tumpson v. Farina, 218 N.J. 450 (2014) .......................................................................................... 4

Turner v. Rogers, 564 U.S. 431 (2011)............................................................................................. 8

United States v. Bagdy, 764 F.3d 287 (3d Cir. 2014) ....................................................................... 7

United States v. Classic, 313 U.S. 299 (1941).................................................................................. 4

United States v. Leon, 468 U.S. 897, 922 (1984) ....................................................................... 14, 15

West v. Atkins, 487 U.S. 42 (1988).................................................................................................... 4

Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638 (3d Cir. 2015)............................... 2

**STATUTES**

42 U.S.C. § 1983 ......................................................................................................................... 1, 3, 7

Burlington Township Ordinance 20-47(A)(5)(e)....................................................................... 17, 18

N.J.S.A. 10:6-2, et seq. .............................................................................................................. 3, 4, 7

N.J.S.A. 2B:12-1 ............................................................................................................. 4

N.J.S.A. 2B:12-10(a) ...................................................................................................... 4

N.J.S.A. 2B:12-6(b) ........................................................................................................ 4

N.J.S.A. 2B:24-7(a) ........................................................................................................ 13

N.J.S.A. 39:4-64 .............................................................................................................. 6

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................ 1, 2

N.J. Court Rule 7:3-2 ...................................................................................................... 12

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. AMEND. IV .............................................................................................. 14

U.S. CONST. AMEND. VI .............................................................................................. 11

U.S. CONST. AMEND. XIV § 1 .................................................................................. 5, 11

**OTHER SOURCES**

Department of Justice, "Dear Colleague Letter" (March 14, 2016) ........................................ 8, 15

**PRELIMINARY STATEMENT**

Plaintiff Anthony Kneisser filed this action to vindicate violations of his civil rights under 42 U.S.C. § 1983 and pendant state claims against Defendants: the Honorable Dennis P. McInerney, individually and in his official capacity as Municipal Court Judge of Burlington Township and the Burlington Township Municipal Court; Township of Burlington; Township of Burlington Municipal Court; and John Does 1-10[3] on September 23, 2015. Before this Court is the motion of Plaintiff for partial summary judgment pursuant to Fed. R. Civ. P. 56, with regard to the deprivation of Plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution as a result of Defendants' unconstitutional policy or practice of, inter alia, sentencing certain municipal defendants to jail when such defendants are unable to pay fines and fees imposed by Defendants, without regard to the municipal defendant's indigency or first considering alternatives to incarceration. Defendants' conduct in implementing this policy against Plaintiff resulted in his injury and the deprivation of his constitutional rights as described herein.

Accordingly, Plaintiff respectfully moves this Court to grant partial summary judgment on the matters of: (1) Plaintiff having suffered the deprivations of his constitutional rights as described herein; (2) that such deprivations were the direct result of Defendants' unconstitutional policy; and that (3) Defendant Burlington Township is therefore liable for Plaintiff's injury.

**STANDARD OF REVIEW**

Summary Judgment is only appropriate when the pleadings, depositions, and other documents in the record show that there is no genuine issue of material fact and that the moving

---

[3] Pending before this court is a motion for leave to amend the complaint to substitute Burlington Court Administrator Rosa Henry for the John Doe defendants.

1

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Moreover, the facts must be viewed in the light most favorable to the non-moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Mancini v. Northampton Cnty.</u>, 836 F.3d 308, 313 (3d Cir. 2016). An issue is genuine if a reasonable jury could return a verdict for the party opposing the motion. <u>Anderson</u>, 477 U.S. at 248. The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. <u>Celotex</u>, 477 U.S. at 323; <u>Parkell v. Danberg</u>, 833 F.3d 313,323 (3d Cir. 2016).

If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 643 (3d Cir. 2015) (<u>citing</u> <u>Celotex</u>, 477 U.S. at 323). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." <u>Willis</u>, 808 F.3d at 643 (<u>citing</u> <u>Celotex</u>, 477 U.S. at 322-323).

## <u>ARGUMENT</u>

## I.  DEFENDANTS VIOLATED PLAINTIFF'S CIVIL RIGHTS.

When Defendants sentenced Plaintiff to jail for no other reason than Plaintiff's inability to pay fines and fees, without any inquiry into Plaintiff's ability to pay, Defendants were acting upon their policy or practice. (SUMF ¶¶30-49; ¶¶50-65; ¶¶105-23).[4]  The record reflects that Defendants' policy and practice is to use arrest and jailing as leverage to secure same day payment-in-full from municipal defendants who have indicated, on the record and through a

---

[4] "SUMF" refers to the Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment.

signed certification, an inability to so. (SUMF ¶¶30-49; ¶¶105-23; ¶114). Judge McInerney claims he did not intend for Plaintiff to actually be sent to the county jail, because he expected that Plaintiff would either find some way to make payment in full by use of the Burlington Township Police Department's telephone, or, if he was unable, Judge McInerney intended to later recall Plaintiff from the Township jail cells and at that time consider his financial questionnaire in determining his indigency. (SUMF ¶49). The record reflects that it is Defendants' policy or practice to sentence certain municipal defendants who are unable to pay to jail; they are then held in Burlington Township jail cells where they are permitted to make a telephone call and ask for money (see SUMF ¶¶113-14; ¶49). I – only after already being held in jail – finally be granted a hearing on his or her indigency. (SUMF ¶¶113-14; ¶¶73-74).[5]

In implementing this unconstitutional and otherwise unlawful policy or practice against Plaintiff, Defendants' acted in clear contravention of Plaintiff's federal and state constitutional rights, and that violation is cognizable pursuant to the Federal Civil Rights Act at 42 U.S.C. §1983 (hereinafter "§1983") and the New Jersey Civil Rights Act at N.J.S.A. 10:6-2, et seq. (hereinafter "NJCRA").

Section 1983 creates no substantive rights but rather, it creates a vehicle for enforcing existing federal rights. The elements of a Section 1983 claim are: (1) "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"; (2) by a "person" acting "under color" of state law. 42 U.S.C.S. § 1983; Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Similarly, NJCRA provides a cause of action for "[a]ny person who has been

_____

[5] Plaintiff seeks to preserve the argument that Judge McInerney would have sent him to the county jail had Plaintiff been unable to come up with the money to pay his fines and fees as a result of an emergent phone call to his family members from jail. However, because Plaintiff does not believe that Judge McInerney's intention can fairly be characterized as undisputed in the record, he does not now rely on it as an undisputed fact under L. Civ. R. 56.1(a). Rather, the threat of arrest and subsequent limited time in jail are violations in and of themselves.

deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State . . . by a person acting under color of law." N.J.S.A. 10:6-2(c). While § 1983 and the NJCRA are substantially similar, "Section 1983 provides remedies for the deprivation of both procedural and substantive rights while N.J.S.A. 10:6-2(c) provides remedies only for the violation of substantive rights." Tumpson v. Farina, 218 N.J. 450, 477 (2014). Here, Plaintiff suffered a substantive violation of his rights, so the two statutes therefore offer coextensive vehicles for redress.

### A. Defendants Were at All Relevant Times "Persons" Acting Under Color of State Law.

Local municipal governments are "persons" pursuant to § 1983 and the NJCRA. See generally, Monell v. New York City Department of Social Services, 436 U.S. 654 (1978); and Tumpson, 218 N.J. 450. A defendant is "acting under color of state law" when that defendant has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)); see also, Polk County v. Dodson, 454 U.S. 312, 317-318 (1981). "In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "attributable to the State.'" Atkins, 487 U.S. at 49 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

Here, it is beyond dispute that Defendants were acting under color of state law when they deprived Plaintiff of his rights. See e.g., N.J.S.A. 2B:12-1 (requiring New Jersey municipalities to establish municipal courts); N.J.S.A. 2B:12-6(b) (requiring that in mayor-council municipalities like Burlington Township, the mayor shall appoint the municipal court judge with advice and consent of the council); N.J.S.A. 2B:12-10(a) (requiring municipalities to "provide

4

for an administrator and other necessary employees for the municipal court and for their compensation"). The other Burlington Township employees who acted in furtherance of depriving Plaintiff of his rights, particularly uniformed, on-duty law enforcement personnel, were also irrefutably acting under color of State law. Griffin v. Maryland, 378 U.S. 130, 135 (1964). Indeed, Defendants have admitted that they were persons acting under color of law. (See Defendants' Answers to the Complaint at Docket Nos 9 & 12, ¶37: "Admitted that Defendants were acting under color of law.").

### B. Defendants Deprived Plaintiff of His Rights to Due Process and Equal Protection.

Defendants' policy or practice violated, inter alia, Plaintiff's Fourteenth Amendment right against the deprivation of "life, liberty, or property, without due process of law" and to "equal protection of the laws" by the State. U.S. CONST. AMEND. XIV, § 1. A State is prohibited from "abridg[ing] the privileges or immunities of the citizens of the United States"; "depriv[ing] any person of life, liberty or property without due process of law"; or "den[ying] to any person within its jurisdiction the equal protection of the laws." Ibid.

The case law establishing that Plaintiff suffered such a deprivation is well established. American jurisprudence has long recognized the vulnerability of "indigent[] [defendants] in our criminal justice system." Bearden v. Georgia., 461 U.S. 660, 664 (1983). Indeed, "[o]ver a [half]-century ago, Justice Black declared that '[there] can be no equal justice where the kind of trial a man gets depends on the amount of money he has.'" Ibid. (quoting Griffin v. Illinois, 351 U.S. 12, 19 (1956) (plurality opinion)). Thereafter, "in Tate v. Short, 401 U.S. 395 (1971), [the Court] held that a State cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full." Bearden, 461 U.S. at 664. Since Tate, it has been well-settled that "'the Constitution prohibits the State

from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.'" Tate, 401 U.S. at 398 (citation omitted); see also Bearden, 461 U.S. at 667; and Morris v. Schoonfield, 399 U.S. 508, 509 (1970) (same).

In Tate, much like in Plaintiff's case, a defendant owed fines totaling $425 imposed for traffic offenses pursuant to a statute that permitted a fine-only sentence. The defendant, not having paid the fines at once, was ordered imprisoned until the fines were paid or were liquidated by a jail credit of $5 per day. The Court held that since Texas had "legislated a 'fines only' policy for traffic offenses," the equal protection clause forbade the conversion of the fine into a prison term. The Court explained that, "imprisonment in such a case is not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant can't pay because he is indigent and his imprisonment, rather than aid collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment." Tate, 401 U.S. at 399.

Kneisser was charged with violating N.J.S.A. 39:4-64, which states as follows: "Any person who violates this section shall be subject to a fine of not less than $ 200 or more than $ 1,000 for each offense." In this regard, the Legislature recognized that the only way to "achieve the punitive end" for the traffic offense was to have the responsible party, here Plaintiff, pay a fine – certainly not have that party sent to jail. Tate, 401 U.S. at 399. Thus, ""imprisonment in such a case [may not be said to have been] imposed to further any penal objective of the State." Ibid. Accordingly, in converting Plaintiff's fine-only sentence to a term of incarceration, Defendants violated Plaintiff's rights to equal protection under the law. Ibid. The only exception would be if Defendants' properly found that Plaintiff had refused to pay – which plainly never

occurred, and indeed could not occur under Defendants' policy or practice unless a defendant explicitly made clear his or her refusal unprovoked. (SUMF ¶¶ 60-65; ¶¶38-46).

In <u>Bearden</u>, "[t]he Supreme Court held that [a] trial court was required to conduct an inquiry into the indigent defendant's ability to pay before revoking his probation and could not 'automatically turn[] a fine into a prison sentence' for an indigent defendant who had failed to adhere to his payment schedule.'" <u>United States v. Bagdy</u>, 764 F.3d 287, 292 (3d Cir. 2014) (quoting <u>Bearden</u>, 461 U.S. at 662). A failure to "inquire into the reasons for [a defendant's] failure to pay," whereby such defendant is sentenced and subject to incarceration "deprive[s]" such defendant of his "freedom simply because, through no fault of his own, he cannot pay the fine." <u>Bearden</u>, 461 U.S. at 672-73. "Such a deprivation [is] contrary to the fundamental fairness required by the Fourteenth Amendment," <u>Id.</u> at 673, and thus explicitly cognizable under § 1983 and the NJCRA.

When determining whether a defendant has willfully refused to pay her fines, the "reasons for nonpayment" are of "critical importance." <u>Bearden</u>, 461 U.S. at 668. Because the Fourteenth Amendment precludes any court from imposing a prison term for nonpayment of fines alone, a sentencing court must first determine if defendant "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay." <u>Id.</u> at 672. Indeed, when a defendant "has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, <u>it is fundamentally unfair</u>" to impose incarceration "without considering whether adequate alternative methods of punishing the defendant are available." <u>Id.</u> at 668-69 (emphasis added).[6]

---

[6] Indeed, in addition to amounting to a violation of a defendant's rights to Due Process and Equal Protection under the Fourteenth Amendment, "incarceration for failure to pay restitution where

Under New Jersey law, nearly a half-century of jurisprudence has relied on these same constitutional principles. In State v. De Bonis, a "[d]efendant pled guilty in a municipal court to a number of motor vehicle charges" and the "municipal court imposed fines and costs" and "refused defendant's application to pay in installments and ordered defendant committed until payment was made." 58 N.J. 182, 185 (1971). The New Jersey Supreme Court held: "If a defendant is unable to pay a fine at once, he shall, upon a showing of that inability, be afforded an opportunity to pay the fine in reasonable installments consistent with the objective of achieving the punishment the fine is intended to inflict," id. at 199, else the Court violate a defendant's rights of due process and equal protection because "a defendant may not be jailed merely because he cannot pay a fine in full at once." Id. at 196.

The Department of Justice has also specifically condemned policies and practices such as Defendants':

> The use of arrest warrants as a means of debt collection, rather than in response to public safety needs, creates unnecessary risk that individuals' constitutional rights will be violated. Warrants must not be issued for failure to pay without providing adequate notice to a defendant, a hearing where the defendant's ability to pay is assessed, and other basic procedural protections. When people are arrested and detained on these warrants, the result is an unconstitutional deprivation of liberty.
>
> [Department of Justice, "Dear Colleague Letter" (March 14, 2016) at 6, https://www.justice.gov/crt/file/832461/download (Hereinafter, "Dear Colleague Letter") (citing Turner v. Rogers, 564 U.S. 431, 446, (2011); Bearden, 461 U.S. at 671-72; and Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).]

---

probationer is unable to do so [also] violates Eighth Amendment." Friedland v. Fauver, 6 F. Supp. 2d 292, 307 (D.N.J. 1998)) (citing Bearden, 461 U.S. at 676).).

Here, Defendants' policy or practice of unlawfully arresting and jailing certain municipal defendants unable to pay fines and fees resulted in Plaintiff's "unconstitutional deprivation of liberty." Ibid.

After Plaintiff pled guilty to a traffic offense, he indicated that he could not make a same-day payment towards his fines and fees and had certified to his indigency in the financial questionnaire. (SUMF ¶¶27-28, ¶¶31-32). Yet he was not provided any hearing on his ability to pay. (SUMF ¶¶33-40). Indeed, Judge McInerney made no inquiry into Plaintiff's finances, debts, or prior efforts to secure money to put towards payment at all. (SUMF ¶33-40). Instead, Judge McInerney demanded that Plaintiff call someone from outside the court room and ask that third party for money. (SUMF ¶33). When Plaintiff indicated that he had no one he could call and ask for money, Judge McInerney sentenced Plaintiff to five (5) days in jail and ordered Plaintiff arrested. (SUMF ¶¶33-42). As a result, Plaintiff was then searched, processed, and jailed in a Burlington Township holding cell until he was permitted by his jailers to make a phone call and secure payment in full of his fines and fees from family members under duress. (SUMF ¶¶66-74). Only after Defendants had payment in full of the fines and fees imposed – nearly five (5) hours after Plaintiff's sentencing and arrest, Defendants released Plaintiff. (SUMF ¶¶73-74).

There is no genuine dispute regarding the facts that: Plaintiff did not refuse to pay his fines; Plaintiff instead indicated an inability to pay his fines immediately; and sentencing Plaintiff to jail was unlawful. In September 2014, on Plaintiff's direct appeal of his May 27, 2014 sentence, before the Honorable Thomas P. Kelly of the Superior Court of New Jersey, Judge Kelly found that Plaintiff did not refuse to pay, finding that Plaintiff was not someone who indicated "in any way an attitude of 'I'm not paying.'" (SUMF ¶¶198-201). Judge Kelly further noted that what Plaintiff endured was "…a deprivation of liberty, there's no doubt about it."

(SUMF ¶199). Indeed, as a result of learning what Plaintiff endured on May 27, 2014, Judge

Kelly apologized "on behalf of the Judiciary."  (SUMF ¶201).



Moreover, the transcript and audio recordings of May 27, 2014, speak for themselves.

(Exhibit B at 8; Exhibit JJ at Disc 1, Track 2 at 1:15:58). It is clear that Plaintiff never refused to

pay and was in no way contemptuous. (SUMF ¶¶34-42).

Defendants have also alleged that Plaintiff's indication that he had no one to call was a

sufficient factual basis upon which to hold Plaintiff was "refusing to pay" and therefore sentence

him to jail.  (SUMF ¶¶44-46; ¶41). Besides shocking the conscience, this claim misapprehends

the law. In Bearden, the Court noted that "a probationer's failure to make sufficient bona fide

efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an

insufficient concern for paying the debt he owes to society for his crime" and that "[i]n such a

10

situation," the State would be "justified in revoking probation and using imprisonment as an appropriate penalty for the offense." 461 U.S. at 668. Here, Plaintiff said he had no one to call, not that he refused to pay or make bonafide efforts to secure payment. (SUMF ¶¶34-42). Judge McInerney made no inquiry at all as to what efforts Plaintiff had taken, or his ability to pay, which <u>Bearden</u> and all aforementioned case law require. Nowhere in the relevant law is there support for the position that a municipal defendant's indication that he has no one to call is tantamount to a refusal to pay, constitutes a refusal to make bonafide efforts to secure payment, or obviates the constitutional requirement on the finder of fact to hold a hearing on such defendant's ability to pay or "consider[] whether adequate alternative methods of punishing the defendant are available" beyond payment or imprisonment. <u>Bearden</u>, 461 U.S. at 669. Thus, such claim must fail as a matter of law.

For these reasons, Plaintiff respectfully moves the Court to grant summary judgment, finding that Defendants violated Plaintiff's Fourteenth Amendment right against incarceration because of his inability to pay traffic fines and fees.

### C. Defendants Deprived Plaintiff of his Right to Counsel.

The Constitution requires that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense," U.S. CONST. AMEND. VI, and the Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV § 1. Moreover, the Supreme Court has held that the right to counsel is not dependent upon whether the proceeding is criminal or civil, because "the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel." <u>Lassiter v. Dep't of Soc. Sec'ys</u>, 452 U.S. 18, 25 (1981). Indeed,

whenever an individual faces the prospect of jail – regardless of duration – the Supreme Court has held that the right to counsel is triggered. <u>Argersinger v. Hamlin</u>, 407 U.S. 25, 37-38 (1972) ("'We hold that no person may be deprived of his liberty who has been denied the assistance of counsel as guaranteed by the Sixth Amendment. This holding is applicable to all criminal prosecutions, including prosecutions for violations of municipal ordinances. The denial of the assistance of counsel will preclude the imposition of a jail sentence.'"). New Jersey law is as explicit, requiring that: "When an indigent litigant is forced to proceed at an ability-to-pay hearing without counsel, there is a high risk of an erroneous determination and wrongful incarceration," and therefore "the Fourteenth Amendment Due Process Clause mandates the appointment of counsel." <u>Pasqua v. Council</u>, 186 N.J. 127, 145-46 (2006). To do so "protects important constitutional values, including the fairness of our civil justice system." <u>Id.</u> at 146.[7]

Here, Plaintiff was denied his right to counsel despite being faced with the distinct possibility of incarceration pursuant to Defendants' policy or practice. (SUMF ¶¶50-55). This is unchanged by the fact that Plaintiff was advised of his right to counsel with regard to the traffic portion of the bifurcated proceeding. (SUMF ¶21). When Plaintiff waived his right to apply for appointed counsel in his traffic ticket proceeding, he understood that the offense did not carry with it the possibility of incarceration. (SUMF ¶¶8-9, ¶6).  Accordingly, Plaintiff was not aware that he faced the possibility of jail when he agreed to proceed without counsel on this traffic ticket. In order for a waiver of counsel to be valid, the waiver must amount to a "a voluntary, knowing, and intelligent relinquishment." <u>Michigan v. Harvey</u>, 494 U.S. 344, 348 (1990). Thus, any waiver

_____

[7] Moreover, AOC directives, New Jersey Court Rules, and other relevant law further demonstrate that indigent defendants are *entitled* to appointment of representation when they face "a consequence of magnitude," which includes the risk of "any sentence of imprisonment." (<u>See</u> e.g., N.J. Court Rule 7:3-2 and the Rules' "Appendix to Part VII Guidelines for Determination of Consequence of Magnitude"). (SUMF ¶55).

of counsel made by Plaintiff before Judge McInernery – during his first appearance or had one occurred otherwise – was therefore invalid.

While Plaintiff was unaware of the prospect of jail, Judge McInerney was undoubtedly aware that, during Plaintiff's time payment request proceeding, Plaintiff did face the possibility of incarceration, because Defendants have a policy or practice of sentencing certain municipal defendants to jail during such proceedings. (SUMF ¶¶45-46; ¶¶75-89; ¶¶113-14). Perhaps Defendants mean to suggest that because the unannounced policy or practice of Defendants was to only jail such individuals for as many as several hours before recalling them for actual ability to pay hearings, that the right to counsel is not triggered. However, Defendants are not told that, despite being sentenced to jail and held in Burlington Township jail cells, they may – at the conclusion of all other proceedings for the day – be recalled before the judge. (SUMF ¶¶113-14). Plaintiff was sentenced to five (5) days in jail, arrested, booked, and placed in a cell. (SUMF ¶¶66-74; ¶¶35). He had no reason to believe anything other than what Judge McInerney told him – that he would be sent to jail for five days. But in any event, even if Defendants' policy or practice was to only jail municipal defendants who are unable to pay for several hours before recalling them – the law guarantees such municipal defendants a right to counsel when facing any jail time, regardless of duration. Argersinger, 407 U.S. at 37-38 (there may be no deprivation of liberty without the right to counsel).[8]

Thus, there can be no genuine dispute regarding the fact that Plaintiff was not provided the opportunity to be represented by counsel during his time payment request proceeding on May 27,

---

[8] Again, New Jersey Law provides that counsel must be appointed to an indigent defendant when a "sentence embodying imprisonment or 'a consequence of magnitude' was contemplated, or actually imposed, by the municipal court." State v. Smith, 408 N.J. Super. 484, 491 (App. Div. 2009) (emphasis added) (citing R. 7:3-2(b) (noting the "Guidelines for Determining a Consequence of Magnitude," appended to Part VII of the Rules); N.J.S.A. 2B:24-7(a); Rodriguez v. Rosenblatt, 58 N.J. 281 (1971); State v. Hermanns, 278 N.J. Super. 19 (App.Div.1994)).

2014, despite Judge McInerney's denial of the fact "Plaintiff was not given the opportunity to be represented by counsel" on the basis that "it was never [Judge McInerney's] intention to sentence him to jail." (SUMF ¶49, Exhibit X, ¶38).  The record plainly reflects that Judge McInerney does sometimes <u>sentence</u> defendants to jail in the context of time payment request proceedings. (SUMF ¶¶113-14).

Thus, Plaintiff respectfully moves the Court to grant summary judgment with regard to the fact that Defendants violated his right to counsel pursuant to the Sixth and Fourteenth Amendments.

### D. Defendants violated Plaintiff's Fourth Amendment Rights by Seizing his Person and Property through Arrest and Booking, Searching Plaintiff's Person, and Jailing Plaintiff Without Probable Cause.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. Plaintiff suffered the search and seizure of his person, absent probable cause that he had committed any offense.

It is generally the case that searches conducted "pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search.'" <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984) (citations omitted) (alteration in original). "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that

in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23.

The Supreme Court "rejected in Malley the contention that an officer is automatically entitled to qualified immunity for seeking a warrant unsupported by probable cause, simply because a magistrate had approved the application." Messerschmidt v. Millender, 565 U.S. 535, 554-55 (2012) (citing Malley v. Briggs, 475 U.S. 335, 345 (1986)). The Court has since explained, "by holding in Malley that a magistrate's approval does not automatically render an officer's conduct reasonable, we did not suggest that approval by a magistrate or review by others is irrelevant to the objective reasonableness of the officers' determination that the warrant was valid. Indeed, we expressly noted that we were not deciding 'whether [the officer's] conduct in [that] case was in fact objectively reasonable.'" Messerschmidt, 565 U.S. at 554-55 (citation omitted).

Here, Plaintiff's deprivation was not the product of a single defective warrant, but rather was the result of Defendants' policy or practice of arresting, searching, and jailing certain municipal defendants who are unable to pay fines and fees. Even Defendants' have since abandoned the position that Plaintiff was sentenced or ordered arrested on the basis of contempt, (SUMF ¶¶97-98), and there has never been any other allegation supporting probable cause to order Plaintiff's search, jailing, or arrest. Thus, is clear that when Plaintiff was "arrested and detained" for "failure to pay without" first being "provid[ed] adequate notice [and] a hearing where [his] ability to pay is assessed, and other basic procedural protections," then "the result is an unconstitutional deprivation of liberty." Dear Colleague Letter at 6.

Unlike most Fourth Amendment cases pursuant to Monell, this case is not a matter of whether an individual officer's conduct in reliance upon on a single judicial order or warrant was

reasonable. Here, Defendants have created a policy or practice that intentionally violates the rights of municipal defendants under the Fourth Amendment and other constitutional provisions relied on herein. Indeed, Officer Shawn McDonough seemed so confused as result of Defendants' policy or practice, he believes that not paying a fine is itself an act of "contempt." (SUMF at ¶193). Accordingly, Plaintiff has not named any Burlington Township officers as individual defendants in attempt to show the liability of Burlington Township for a single action – this case is much more straightforward, whereby Plaintiff has shown Defendants' policy and practice has deprived the rights of other municipal defendants in similar ways and for similar reasons before and after Plaintiff's injury of May 27, 2017. (SUMF ¶108).

For these reasons, Plaintiff respectfully moves the Court to grant summary judgment with regard to the fact that Defendants violated his guarantee against unlawful search and seizure pursuant to the Fourth Amendment.

## II.   DEFENDANT BURLINGTON TOWNSHIP IS LIABLE FOR PLAINTIFF'S DAMAGES ARISING OUT OF THE UNCONSTITUTIONAL POLICY ESTABLISHED BY JUDGE MCINERNEY AND ROSA HENRY.

Monell holds that municipal governments may be sued for damages, as well as declaratory and injunctive relief, whenever "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover. . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's decisionmaking channels." Monell, 436 U.S. at 690-91.

> An individual's conduct implements official policy or practice
> under several types of circumstances, including when (1) the
> individual acted pursuant to a formal government policy or a
> standard operating procedure long accepted within the government

16

entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

[Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-484 (1986); McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005); and Laverdure v. County of Montgomery, 324 F.3d 123, 125-126 (3d Cir. 2003)).]

The Supreme Court has explained what constitutes an "official policy" as follows:

"[O]fficial policy" often refers to formal rules or understandings -- often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time. That was the case in Monell itself, which involved a written rule requiring pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. However, as in Owen and Newport, a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim [of such a policy] would therefore be contrary to the fundamental purpose of § 1983.

[Pembaur, 475 U.S. at 480-81 (1986) (referencing Monell, 436 U.S. 658; Owen v. City of Independence, 445 U.S. 622 (1980); and Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)).]

Here, Judge McInerney and Rosa Henry have testified to having final policy-making authority regarding the Burlington Township Municipal Court. (SUMF ¶¶177-95). Additionally, Burlington Township Ordinance 20-47(A)(5)(e) specifically provides that the judge of the Municipal Court is vested with the authority to "act as administrative head of the office of the

17

Court and be responsible for the proper and efficient administration of the Courts."  Moreover, the Mayor and Council of Burlington Township – who are also clearly final policymakers for Burlington Township – have ratified the conduct of Judge McInerney, despite at least Plaintiff's complaints regarding the policy, through continually reappointing him as municipal judge and failing in any way to disallow the policy. (SUMF ¶¶142-76). Furthermore, Judge McInerney made a deliberate choice to enact a policy or practice that reflects a deliberate indifference to the rights of municipal defendants appearing before Burlington Township Municipal Court. Indeed, the record proves that he continues to enforce this policy against defendants that appear before him. (SUMF ¶108).

Further, Burlington Township Ordinance 20-47(A)(5)(e) provides that the judge of the Municipal Court is vested with the authority to "act as administrative head of the office of the Court and be responsible for the proper and efficient administration of the Courts."  The Township, through its adoption of such an ordinance and repeated appointment of Judge McInerney under such ordinance, has irrefutably delegated broad responsibility for the daily operations of the Municipal Court to its head judge. Federal Courts addressing similar ordinances in the context of § 1983 have interpreted it to have vested final decision-making authority in the chief of police. See e.g., Hines v. Albany Police Dep't., 520 Fed. Appx. 5 (2d Cir. 2013). Like the ordinance at issue in this case, the Albany City Code in Hines expressly authorized its chief of police, to "make, adopt and enforce such reasonable rules, orders and regulations" as were necessary for the police department's performance of all duties." Id. at 7. "Under th[o]se circumstances, [the Second Circuit held that] the Police Chief was the final decisionmaker responsible for establishing the policy 'with respect to the subject matter in question' in this case." Id. at 8.

Defendants' policy or practice – which might otherwise be characterized as a number of interdependent policies and practices all designed to maximize the amount of fines and fees collected by Defendants on the day of court, and as are set forth at length in Plaintiff's Statement of Material Facts not in Dispute – was testified to repeatedly various Burlington Township employees during their depositions.  (SUMF ¶¶105-23). Thus, to suggest that Defendants have n such policy or practice disregards the record completely. The policy or practice was "unquestionably" the moving force of the constitutional violation here. <u>Dodson</u>, 454 U.S. at 326. It was established by an official policymaker.

For these reasons, Plaintiff respectfully moves the Court to grant summary judgment with regard to Defendants' policy or practice as described herein.

## III.   EVEN IF PLAINTIFF WAS THE ONLY INDIVIDUAL SUBJECT TO SUCH A DEPRIVATION OF HIS RIGHTS UNDER DEFENDANTS' POLICY, DEFENDANTS ARE LIABLE.

The Supreme Court has defined "precisely when a decision on a single occasion may be enough to establish an unconstitutional municipal policy." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988) (plurality opinion). In adopting Justice Brennan's prior plurality opinion in <u>Pembaur</u>, the <u>Prapotnik</u> Court held that a Plaintiff must show the following:

> First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. Third, whether a particular official has "final policymaking authority" is a question of state law. Ibid. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.
>
> [<u>Ibid.</u> (citations omitted).]

"Where plaintiffs allege that their rights were deprived not as a result of the enforcement of an unconstitutional official policy or ordinance, but by the unconstitutional application of a valid policy, or by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." Amnesty America v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004). "Such an action constitutes the act of the municipality and therefore provides a basis for municipal liability where it is taken by, or is attributable to, one of the city's authorized policymakers." Ibid. (citing Pembaur, 475 U.S. at 481-82). "Thus, even a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered,' is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983." Amnesty America, 361 F.3d at 126 (quoting Pembaur, 475 U.S. at 481-82).

Thus, a municipality may be held liable for the actions of its employees when "the policymakers make a deliberate choice from among various alternatives to follow a particular course of action, where the policy reflected deliberate indifference to the constitutional rights of the municipality inhabitants and where the policy was the moving force behind a constitutional violation." Mark v. Borough of Hatboro, 51 F.2d 1137, 1149 (3d. Cir.), cert. denied, 516 U.S. 858 (1995). Therefore, liability must attach when the "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Id. (quoting Monell, 436 U.S. at 694).

Here, as articulated infra at Point II, as a matter of law, Judge McInerney was vested by Burlington Township's mayor and council, every three years at reappointment, with "final policymaking authority" with regard to the Burlington Township Municipal Court. Ibid. (SUMF ¶¶ 177-95). State law required the appointment of a municipal judge with such authority by the

municipality of Burlington Township. Judge McInerney was therefore responsible under state law for making policy in that area of the municipality's business. Therefore, "the challenged action [was] taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the [municipality]'s business." Ibid.[9]

Accordingly, Plaintiff respectfully moves the Court to grant summary judgment regarding the fact that – even absent the recurring implementation of this policy, in other words, even if this Court finds is no genuine dispute over the fact that Plaintiff alone suffered under this policy – Defendants are liable to Plaintiff for their unconstitutional policy which was the sole cause of Plaintiff's injury.

## CONCLUSION

There can be no genuine dispute of the fact that Plaintiff suffered deprivations of his fundamental rights.



Moreover, the law is well-settled with regard to the

---

[9] Furthermore, even when "plaintiffs allege constitutional deprivations at the hands of the lower-level municipal employees to whom some authority has been delegated, rather than at the hands of those officials with final policymaking authority," Amnesty America, 361 F.3d at 126,, "plaintiffs may establish that the city is liable for their injuries by proving that 'the authorized policymakers approve[d] a subordinate's decision and the basis for it.'" Ibid. (quoting Praprotnik, 485 U.S. at 127. Here, we know that Burlington Township Municipal Court employees were trained on the policy (SUMF ¶118, ¶114), knew not to generate commitment to jail forms in situations where they knew Judge McInerney had ordered someone arrested and jailed but planned to recall such person later for the required due process of an ability to pay hearing (SUMF ¶113), and that Burlington Township police officers knew that municipal defendants could be released from the jail cells if and when such defendants found someone to come to Burlington Township and pay their fines in full (SUMF ¶114, ¶112; see also SUMF ¶73, ¶¶83-84).

unconstitutionality of Defendants' actions. Furthermore, Defendants conduct clearly arose as result of the policy or practice created by Judge McInerney and Rosa Henry, the final policymakers for the Burlington Township Municipal Court. This unconstitutional policy or practice requires active participation by Burlington Township personnel assigned to both the Municipal Court and the police department, and despite its prior condemnation by the Superior Court of New Jersey, the record shows that this policy or practice persists.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for partial summary judgment.

Respectfully Submitted,

Dated: May 17, 2017                                By: _____
                                                         Alexi M. Velez, Esq.

**AMERICAN CIVIL LIBERTIES UNION**
**OF NEW JERSEY FOUNDATION**
Jeanne LoCicero
Alexander Shalom
Alexi M. Velez
89 Market Street, 7th Floor
P.O. Box 32159
Newark, NJ 07102
Telephone: (973) 854-1715
Facsimile: (973) 642-6523

**CARLUCCIO, LEONE, DIMON,**
**DOYLE & SACKS, LLC**
Marguerite Kneisser
9 Robbins Street
Toms River, NJ 08753
Tel: (732) 797-1600 ext. 223
Facsimile: (732) 797-1690

*Counsel for Plaintiff*

22