# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY KNEISSER,<br><br>                              Plaintiff,<br><br>                    v.<br><br>THE HONORABLE DENNIS P.<br>MCINERNEY, Individually and in his official<br>capacity as Municipal Court Judge of Burlington<br>Township and the Burlington Township<br>Municipal Court; TOWNSHIP OF<br>BURLINGTON; TOWNSHIP OF<br>BURLINGTON MUNICIPAL COURT; and<br>JOHN DOES 1-10,[1]<br><br>                              Defendants. | Civil Action No.: 15-7043 (NLH/ AMD)<br><br>**JURY TRIAL DEMANDED**<br><br><br>MOTION DAY OF JULY 3, 2017[2] |

---

### PLAINTIFF'S OPPOSITION TO DEFENDANT JUDGE MCINERNEY'S
### MOTION FOR SUMMARY JUDGMENT

---

[1] Pending before this Court is a motion for leave to amend the complaint to substitute Burlington Township Court Administrator Rosa Henry for the John Doe defendants.

[2] Plaintiff was granted an automatic extension of time to file by the Clerk of Court pursuant to L. Civ. R. 7.1(d), thereby extending his deadline to Oppose Defendant's Motion to June 19, 2017.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ..................................................................................... 3

ARGUMENT ........................................................................................................ 4

    I.    The Factual Assertions First Raised in Defendant's Brief are Improper and Should Not Be Considered............................................................................................................ 4

    II.  Judicial Immunity Does Not Apply. ...................................................... 6

      A.   Defendant Failed to Meet his Burden of Establishing that the Affirmative Defense of Judicial Immunity Should Apply............................................................................. 8

      B.   Defendant is Liable for his Administrative Act of Establishing and Enforcing Defendants' Unconstitutional Policy or Practice............................................. 12

      C.   Judicial Immunity is Inapplicable to Claims Under Monell and its Progeny ............... 16

      D.   Defendants' Policy was Established in Complete Absence of Jurisdiction. .................. 20

    III. Defendant's Argument that He is Not a "Person" Under Section 1983 Misapprehends the Law............................................................................................................... 21

CONCLUSION.................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>A.V. v. Ashrafi</u>, Doc. No. BER-C-58-15 (N.J. Ch. Div. June 11, 2015) (unpublished) .... 9, 21, 22

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) ................................................. 3

<u>Antoine v. Byers & Anderson</u>, 508 U.S. 429 (1993) ....................................................... 9

<u>Bearden v. Georgia</u>, 461 U.S. 660 (1983) ..................................................................... 11

<u>Blake v. Kline</u>, 612 F.2d 718 (3d Cir. 1979) ............................................................... 22

<u>BMI Salvage Corp. v. Federal Aviation Administration</u>, 272 Fed. Appx. 842 (11th Cir. 2008) ... 9

<u>Boyd v. Carroll</u>, 624 F.2d 730 (5th Cir. 1980) .............................................................. 8

<u>Bradley v. Fisher</u>, 80 U.S. 335 (1871) ...................................................................... 7, 9

<u>Burns v. Reed</u>, 500 U.S. 478 (1991) ............................................................................. 9

<u>Carbalan v. Vaughn</u>, 760 F.2d 662 (5th Cir. 1985) ..................................................... 18

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ......................................................... 3, 4

<u>Chisholm v. McManimon</u>, 275 F.3d 315 (3d Cir. 2001) .............................................. 22

<u>Christy v. Pa. Turnpike Comm'n.</u>, 54 F.3d 1140 (3d Cir. 1995) ................................. 22

<u>DeLuca v. Atlantic Refining Co.</u>, 176 F.2d 421 (CA2 1949) (L. Hand, J.)................... 6

<u>Dennis v. Sparks</u>, 449 U.S. 24 (1980) ........................................................................ 7

<u>Familias Unidas v. Briscoe</u>, 619 F.2d 391 (5th Cir. 1980) ................................... 17, 18

<u>Figueroa v. Blackburn</u>, 208 F.3d 435 (3d Cir. 2000) .............................................. 7, 9

<u>Ford Motor Co. v. Dept. of Treasury of Indiana</u>, 323 U.S. 459 (1945) ..................... 22

<u>Forrester v. White</u>, 484 U.S. 227 (1988) ...................................................... 9, 12, 16, 18

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982) ................................................................ 9

<u>Harper v. Merckle</u>, 638 F.2d 848 (5th Cir. 1981) ....................................................... 8

Hawkins v. Harris, 141 N.J. 207 (1995) ................................................................. 9

In re: the Honorable Leon A. Kendall, 712 F. 3d 814 (3d Cir. 2013) ................................ 8, 12, 20

Ingram v. Deptford, 858 F. Supp. 2d 386 (D.N.J. 2012) .............................................. 9

Irving v. Chester Water Auth., 439 F. App'x 125 (3d Cir. 2011) .................................... 6

Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103 (3d Cir. 1985) ...................... 6

Johnson v. Moore, 958 F.2d 92 (5th Cir. 1992) ...................................................... 18

Mancini v. Northampton Cnty., 836 F.3d 308 (3d Cir. 2016) .......................................... 3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .............................. 6

Mendoza v. Larotonda, 270 F. App'x 157 (3d Cir. 2008) ............................................. 13

Mireles v. Waco, 502 U.S. 9 (1991) ........................................................... passim

Mitchell v. Forsythe, 472 U.S. 511 (1985) ......................................................... 9

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ........................................... 16, 18

Morrison v. Lipscomb, 877 F.2d 463 (6th Cir. 1989) ............................................ 18, 19

ODonnell v. Harris Cnty., No. H-16-1414 (S.D. Tex. Apr. 28, 2017) (unpublished) ................. 19

ODonnell v. Harris Cty., No. H-16-1414 (S.D. Tex. Dec. 16, 2016) (unpublished) .................. 19

Parkell v. Danberg, 833 F.3d 313 (3d Cir. 2016) .................................................. 3

Pasqua v. Council, 186 N.J. 127 (2006) ......................................................... 10

Pierson v. Ray, 386 U.S. 547 (1967) ........................................................... 7, 9

Randall v. Brigham, 74 U.S. 523 (1896) .......................................................... 9

Regents of the Univ. of Cal. v. Doe, 519 U.S. 425 (1997) ........................................ 22

Schiazza v. Zoning Hearing Bd., 168 F. Supp. 2d 361 (M.D. Pa. 2001) .............................. 9

Scott v. Stansfield, L. R. 3 Ex. 220 (1868) ..................................................... 7

Sibley v. Lando, 437 F.3d 1067 (11th Cir. 2005) ................................................. 8

State v. De Bonis, 58 N.J. 182 (1971) ........................................................................ 11

Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998)............................. 20

Stump v. Sparkman, 435 U.S. 349 (1978) ............................................................. 9, 13

Tate v. Short, 401 U.S. 395 (1971) ........................................................................... 11

United States v. Cotton, 535 U.S. 625 (2002) .......................................................... 20

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ..................................... 22

Williams v. Illinois, 399 U.S. 235 (1970)................................................................. 11

Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638 (3d Cir. 2015)............................. 4

**STATUTES**

42 U.S.C. § 1988 ..................................................................................................... 10

Burlington Township Ordinance 20-47(A)(5)(e).......................................................... 23

N.J.S.A. 2B:12-23.1 ................................................................................................. 11

**OTHER AUTHORITIES**

New Jersey Courts, "Qualifications to Become a Municipal Court Judge" ................................. 23

**RULES**

Fed. R. Civ. P. 56................................................................................................ 1, 3, 4

L. Civ. R. 56.1(a) ...................................................................................................... 4

## PRELIMINARY STATEMENT

On May 16, 2017, Defendant the Honorable Dennis P. McInerney, "individually, in his official capacity as Municipal Court Judge of Burlington Township," moved for summary judgment on all claims pursuant to Fed. R. Civ. P. 56, relying exclusively on the Doctrine of Judicial Immunity. See Doc. No. 33-5 (Def. Br. at 1).[3]  However, the doctrine of judicial immunity does not apply, and his Motion should therefore be denied.

The doctrine of judicial immunity serves an important function in upholding the ability of our courts to confidently and fairly administer justice. For that reason, judicial immunity generally provides sweeping insulation for judges against liability from suit for a judge's mistake or error. This is because, as courts have consistently noted, the doctrine of judicial immunity does not exist to protect judges in their poor decisions, but rather it protects the people by ensuring that our fair and impartial judiciary can act independently, unfettered by fear of suit from an unsatisfied litigant or in deciding controversial cases. It is in the public interest to allow judges to freely administer justice and serve as a stalwart check against encroachments on freedom, justice, and democracy.

However, even the important doctrine of judicial immunity is subject to certain limitations. While judicial immunity has even been applied even in cases where judges have made one extraordinary error, it cannot render a judge immune from suit as arising out of a policy or practice, repeatedly implemented and in knowing violation of well-established law. Additionally, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial

---

[3] "Def. Br." refers to Defendant Judge McInerney's brief in support of his May 16, 2017, Motion for Summary Judgment. (Doc. No. 33-5).

capacity. Finally, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Here, all three exceptions to the immunity doctrine apply.

First, none of the controlling judicial immunity cases relied on by Defendant involved an unlawful policy or practice, unlike here. Instead, those cases hold that the doctrine of judicial immunity will insulate a judge from liability for a single mistake or error, often made in haste. Judicial immunity cannot attach – and has not been applied to – a judge's reliance on a policy or practice of knowingly depriving the constitutional rights of indigent individuals, particularly where the Defendants continue to implement this policy or practice despite being twice condemned by State adjudicative bodies and otherwise violating well established Federal and State Constitutional Law.

Second, the policy or practice at issue in this case was developed by Judge McInerney as part of his role in what he has described as "the executive component" of the Burlington Township Municipal Court, whereby he and Court Administrator Rosa Henry develop, adopt, and implement policies and practices applicable to the Municipal Court, including the policy or practice which resulted in Plaintiff's injury. Judicial immunity does not attach to office, but rather to task, and since Plaintiff suffered as a result of a policy or practice created pursuant to an administrative function, rather than a singular judicial act, judicial immunity does not apply.

Third, while courts have been reluctant to find that a judge acted in complete absence of jurisdiction, in this unique case, Judge McInerney has no jurisdiction to implement and enforce the policy or practice, as it amounts to a violation of well-established constitutional law <u>and</u> he continues to implement and enforce the policy despite its specific repudiation in two official

settings. In this case, granting immunity to Judge McInerney would permit Defendants to continue to implement, and profit from, their unconstitutional policy.

Judicial immunity finds its value in serving the public good and allowing judges to do what they do best, exercise their prudent discretion, without fear or intimidation. Thus, in most cases, even when a serious error results from <u>a singular incident</u> undertaken as part of the <u>judicial function</u>, judicial immunity should shield a judge from individual liability. Exceptions to the doctrine are necessarily few, but they are similarly important to prohibit the misuse of the immunity doctrine, which would threaten the integrity of, and public trust in, the judicial pillar of our democracy. The careful application of judicial immunity jurisprudence here plainly establishes that judicial immunity does not apply, and therefore Defendant's Motion must be denied.

## <u>STANDARD OF REVIEW</u>

Summary Judgment is only appropriate when the pleadings, depositions, and other documents in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). Moreover, the facts must be viewed in the light most favorable to the non-moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Mancini v. Northampton Cnty.</u>, 836 F.3d 308, 313 (3d Cir. 2016). An issue is genuine if a reasonable jury could return a verdict for the party opposing the motion. <u>Anderson</u>, 477 U.S. at 248. The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. <u>Celotex</u>, 477 U.S. at 323; <u>Parkell v. Danberg</u>, 833 F.3d 313,323 (3d Cir. 2016). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." <u>Willis v.</u>

3

UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015) (citing Celotex, 477 U.S. at 323).

## ARGUMENT

**I.      The Factual Assertions First Raised in Defendant's Brief are Improper and Should Not Be Considered**

This matter is before the Court on Defendant's Motion for Summary Judgment, and therefore the relevant facts are limited to those material facts not subject to genuine dispute. See, Fed. R. Civ. P. 56(a). As movant, Defendant was required to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). Here, outside the scope of his L. Civ. R. 56.1(a) Statement, Defendant alleges various additional facts in his brief in support of summary judgment. See, Def. Br. at 9-19 (making ten pages of factual allegations without specific citations even when relying on a quotation, and failing to even once cite to his L. Civ. R. 56.1(a) Statement; characterizing deposition testimony with citations like, "See Exhibit '4'"). As these improper factual allegations within Defendant's Brief disregard all relevant procedural rules, they should not be considered.

Indeed, Defendant spends twenty (20) pages of his thirty-two (32) page brief making factual assertions not included in his L. Civ. R. 56.1(a) Statement and seeking to recast the Complaint, which marks a clear intent to impugn the character of Plaintiff without even alleging that such facts are not subject to genuine dispute. Of course, that is because there can be no genuine dispute that such facts are largely proven false by the record, entirely irrelevant, and in any event,

are eviscerated by the audio recording and transcript of what actually transpired on May 27, 2014.

See generally, Pl. Ex. J; Pl. Ex. JJ at Disc 1, Track 2 at 20:20 and Track 2 at 1:15:58.[4]

> As just one example, Defendant writes:

>> The Court did not think that Kneisser was being straightforward with the Court. (See Exhibit "7"). Kneisser was unwilling to make a phone call, and was trying to avoid payment of the fine. (See Exhibit "7"). A defendant is asked to go out and make a phone call. (See Exhibit "7"). Sometimes a defendant is asked to sit and wait until the end of the Court session so that the Court can talk to them again. (See Exhibit "7"). It was obvious to the Court that Kneisser was not taking the matter seriously, and wanted to avoid the payment of fines. (See Exhibit "7").

Def. Br. at 16. Plaintiff would spend his entire Opposition to Defendant's Motion for Summary Judgment attempting to respond to each of Defendant's improperly alleged facts, which are so entirely unsupported and repeatedly refuted by the record that, to the extent they may contradict the audio recording and transcript of May 27, 2014, they cannot be sufficient to create any genuine dispute of fact. See e.g., Pl. SUMF at ¶198 (Judge Kelly finding on Plaintiff's municipal appeal that Plaintiff did not refuse to pay); ¶¶202-14 (official rejection of the allegation that Plaintiff was in any way disrespectful or refused to pay); ¶¶105-23 (setting forth in great detail Defendants' policy); ¶¶75-89 (showing that Plaintiff was not the only professedly-indigent individual that Judge McInerney sentenced to jail on the basis of inability to pay on May 27, 2014); Pl. Ex. J

---

[4] For the convenience of the Court, Plaintiff relies on the same appendices in support of his Motion for Partial Summary Judgment and this Opposition to Defendant's Motion for Summary Judgment. Accordingly, as used herein, Plaintiff's Exhibits ("Pl. Ex.") and Plaintiff's Confidential Appendix ("Pl. Confid. App'x") refer to those exhibits and appendices submitted by Plaintiff in support of his May 17, 2017, Motion for Partial Summary Judgment. Plaintiff also relies herein on his L. Civ. R. 56.1(a) Statement of Material Facts Not in Dispute ("Pl. SUMF") in support of his Motion. See generally, ECF filings at Document No. 35.

(transcript of May 27, 2014); Pl. Ex. JJ at Disc 1, Track 2 at 20:20 and Track 2 at 1:15:58 (audio recordings of Plaintiff's interactions with Judge McInerney on May 27, 2014).

Defendant's dogmatic claims that Plaintiff was disrespectful or refused to pay are not undisputed simply because Defendant and his co-Defendants have repeatedly alleged it to be so. It is well-established that "self-serving deposition testimony is insufficient to raise a genuine issue of material fact," Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011), and therefore is plainly insufficient to overcome clear and irrefutably evidence to the contrary, such as the audio recording and transcript in this case. Moreover, "[l]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion," Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985), just as argument cannot overcome actual evidence to the contrary. A genuine dispute requires more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citing DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (CA2 1949) (L. Hand, J.), cert. denied, 338 U.S. 943 (1950)).

Here, Defendant's ten pages of improperly raised facts should not be considered on the basis of their procedural defects alone, but in any event, these improper assertions amount to nothing more than self-serving statements – twice rejected in official fact-findings[5] – which cannot sustain Defendant's Motion.

## II.    Judicial Immunity Does Not Apply.

Judicial immunity serves to protect our independent judiciary, its fair and impartial administration of justice, and its integrity and credibility in the eyes of the people it serves. This is not because judges are incapable of erring or that their judgment is always infallible; no, our judges

---

[5] See Pl. SUMF at ¶¶198, ¶¶202-14.

have "jurisdiction to err." Figueroa v. Blackburn, 208 F.3d 435, 445 (3d Cir. 2000). Indeed, the common law doctrine may even insulate a judge from liability arising out of one judicial action motivated by malice or corruption, but it "'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" Pierson v. Ray, 386 U.S. 547, 554 (1967) (emphasis added) (quoting Scott v. Stansfield, L. R. 3 Ex. 220, 223 (1868)) (citing Bradley v. Fisher, 80 U.S. 335, 349-50 (1871)); see also Dennis v. Sparks, 449 U.S. 24, 31 (1980). A judge must "decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants." Pierson, 386 U.S. at 554. A judge may err, and should be insulated in her singular or one-off errors, because our system of justice provides that these "errors may be corrected on appeal." Ibid. The judicial immunity doctrine therefore sets forth the important principle: better that a judge should make an independent decision that results in or amounts to an error – even at the expense of one litigant's case – than it is to have a judiciary that is fettered in its administration of justice because of fear of suit by the unsatisfied litigant.[6] Indeed, co-counsel for Plaintiff has steadfastly defended the

---

[6] "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Mireles v. Waco, 502 U.S. 9, 9 (1991) (quoting Bradley, 80 U.S. at 347.)

doctrine in past litigation.[7] Accordingly, Plaintiff does not take lightly the assertion that in this case, judicial immunity cannot apply.

However, even the important doctrine of judicial immunity is subject to certain limitations. While judicial immunity has been applied even in cases where judges have made an extraordinary error or mistake, the doctrine cannot render a judge immune from suit as result of an injury arising out of his administratively-created policy or practice, particularly when he continues to implement such policy in knowing violation of well-established constitutional law. Additionally, a judge is not immune from liability for non-judicial actions, or for actions taken in the complete absence of jurisdiction. Here, all three exceptions to the immunity doctrine apply.

### A. Defendant Failed to Meet his Burden of Establishing that the Affirmative Defense of Judicial Immunity Should Apply.

Judge McInerney has failed to satisfy his burden in establishing his claim of immunity, because he has failed to establish that judicial immunity applies to his policy or practice, which he established in his administrative capacity, and which is enforced not only by him but also by various non-judicial Burlington Township employees.

Judicial immunity is an affirmative defense. See, Sibley v. Lando, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005); Harper v. Merckle, 638 F.2d 848, 855 n.8 (5th Cir. 1981); Boyd v. Carroll, 624 F.2d 730, 732-33 (5th Cir. 1980). "[A] party who has asserted an affirmative defense has the

---

[7] In In re: the Honorable Leon A. Kendall, 712 F. 3d 814 (3d Cir. 2013), co-counsel argued as *amicus curiae* before the Third Circuit: "[T]o render reasoned decisions on the controversies before them and to articulate in writing the reasons for those decisions [is central to our system of justice]. That core judicial function has, for good reason, always been protected from attacks by parties, the public, and other branches of government, under the aegis of both the First Amendment right to free speech and the doctrine of judicial immunity – a doctrine that is near-absolute for such judicial acts as opinion writing." *Amicus curiae* brief available at: https://www.aclu-nj.org/download_file/view_ inline/1015/896/.

burden of proving the affirmative defense." BMI Salvage Corp. v. Federal Aviation Administration, 272 Fed. Appx. 842, 852 (11th Cir. 2008). Thus, the proponent of a claim to absolute immunity in a § 1983 action bears the burden of establishing the justification for such immunity. Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993) (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)); see also, Schiazza v. Zoning Hearing Bd., 168 F. Supp. 2d 361, 373 (M.D. Pa. 2001).

Judge McInerney has irrefutably failed to satisfy his burden, because none of the federal cases he relies on involve an administratively-created, unconstitutional policy or practice; instead, every case involves a single judicial action, incident, mistake, error.[8] The New Jersey cases he cites, in addition to not being controlling authority, are similarly inapposite and unavailing. See, e.g., Hawkins v. Harris, 141 N.J. 207, 214 (1995) (single inflammatory statement, not alleging a policy or practice); A.V. v. Ashrafi, Doc. No. BER-C-58-15 (N.J. Ch. Div. June 11, 2015) (unpublished) (State judges immune from liability for publishing online a decision that allegedly

---

[8] Figueroa, 208 F. 3d at 444 (applying judicial immunity to a claim regarding a judge's single error of law in sentencing one defendant to jail for contempt, where the judge acted with "haste" and made an error of law regarding a directive it was unclear she had seen); Mireles, 502 U.S. at 12 (applying judicial immunity to a "particular act" – characterized as a "mistake")(emphasis added); Randall v. Brigham, 74 U.S. 523, 536 (1896) (challenging one judicial act, wherein no policy or practice was alleged); Bradley, 80 U.S. 335 (same); Mitchell v. Forsythe, 472 U.S. 511 (1985) (not a judicial immunity case, and also a case where absolute immunity was not applied, but nonetheless, involving one alleged act of misconduct by a government official) ; Pierson, 386 U.S. 547 (judge immune for alleged errors in sentencing one group of clergymen arrested and sentenced together, plaintiffs did not allege a policy or practice); Harlow v. Fitzgerald, 457 U.S. 800 (1982) (not a judicial immunity case, and not alleging a policy or practice); Stump v. Sparkman, 435 U.S. 349 (1978) (one plaintiff not alleging a policy or practice); Forrester v. White, 484 U.S. 227 (1988) (same); (two inmates sentenced together by same adjudicative body with same sentence, not alleging a policy or practice); Ingram v. Deptford, 858 F. Supp. 2d 386, 390 (D.N.J. 2012) (defendant was not a judge but a court officer acting on judge's one order, not alleging a policy or practice).

cited to the plaintiff's confidential and expunged convictions, as are judges who once cited that decision).

Indeed, the one case Defendant relies on that does involve multiple judicial acts wherein the same error was alleged to have been repeated in multiple cases, though notably not undertaken by the same judge, is not only inapposite, it also supports many of Plaintiff's claims. See Pasqua v. Council, 186 N.J. 127 (2006). In Pasqua, three parents brought suit against four State judges who had ordered the parents incarcerated for failure to pay child support without apprising them of their right to counsel, and if indigent, their right to have counsel appointed. Id. at 133, 139. The New Jersey Supreme Court unanimously held that "that our Federal and State Constitutions guarantee th[e] right" of "indigent parents charged with violating child support orders and subject to coercive incarceration at ability-to-pay hearings have . . . [to] appointed counsel." Id. at 133. However, despite prevailing on their constitutional claim, the parents were denied attorney's fees under 42 U.S.C. § 1988(b), because the parents did not allege any exception to the judicial immunity doctrine and instead argued only that "strong public policy" demanded they be awarded fees as the prevailing party. Id. at 150-51. The court further noted that the New Jersey Court Rule and directive defining the parents' rights had not yet been written when the parents suffered their injuries. Id. at 154. Therefore, the parents prevailed on the merits, and indeed, the State Judiciary created the subsequent rules and directive in response to their case, Id. at 151, but their claim for fees was denied.

Here, unlike in Pasqua, Defendants' policy or practice was established is in clear contravention of our federal and state constitutions, half a century of state and federal precedent

holding same,  and longstanding state court rules and directives.[9] Moreover, Plaintiff has shown

beyond any genuine dispute that Defendants have been specifically advised that their policy or

practice, as implemented against Plaintiff, violated State and Federal law. See Pl. SUMF at ¶¶199-

200 (Judge Kelly noting that: Defendants' actions with regard to Plaintiff amounted to ". . . a

deprivation of liberty, there's no doubt about it"; Plaintiff's treatment by Defendants violated State

v. DeBonis; and Judge McInerney gave no consideration to Plaintiff's inability to pay); see also

Pl. SUMF at ¶¶209-10. However, Defendants continue to implement, enforce, and

unapologetically defend it. See, Pl. SUMF at ¶¶108, 115, 123, 212; Def. Br. at 16 (Explaining

---

[9] See e.g., Bearden v. Georgia, 461 U.S. 660, 668-69 (1983) (it is unconstitutional to convert a fine-only offense to a jail term based on inability to pay; when an individual has failed to pay a fine after having been provided time to pay, a court must first conduct an inquiry as to why such person has failed to pay and make findings with regard to ability to pay; imprisonment for non-payment is appropriate only where a person has  the means to pay but has "willfully refused" or no other "adequate alternative methods" of punishment are available); Tate v. Short, 401 U.S. 395 (1971) (the Constitution prohibits a state from converting a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full); Williams v. Illinois, 399 U.S. 235 (1970) (same); State v. De Bonis, 58 N.J. 182 (1971) (same); see also Pl. Ex. M (New Jersey Court Directive #02-10, providing that indigent defendants shall be afforded time payment plans and allowing for alternatives to payment in the event of indigency-related default on pre-existing time payment plans); N.J.S.A. 2B:12-23.1 ("if a municipal court finds that a person does not have the ability to pay a penalty in full on the date of the hearing or has failed to pay a previously imposed penalty, the court may order the person to perform community service in lieu of the payment of a penalty").

away Plaintiff's <u>arrest and jailing</u> in stating, "Sometimes a defendant is asked to sit and wait until the end of the Court session so that the Court can talk to them again.").

In any event, in relying exclusively on inapposite precedent, Defendant has failed to satisfy his burden in establishing that the affirmative defense of judicial immunity should apply.

### B. Defendant is Liable for his Administrative Act of Establishing and Enforcing Defendants' Unconstitutional Policy or Practice.

In creating the unconstitutional policy under which Plaintiff's deprivation of rights arose, Judge McInerney was acting in his administrative capacity and is therefore not entitled to judicial immunity.

"[A] judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." <u>Mireles</u>, 502 U.S. at 11-12 (internal citations omitted); <u>see also</u> <u>In re Kendall</u>, 712 F.3d at 834 (same). Non-judicial acts include "the <u>administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform</u>." <u>Forrester</u>, 484 U.S. at 227 (emphasis added). Non-judicial acts are not entitled to judicial immunity, because, "as in other contexts, immunity is justified and defined by the <u>functions</u> it protects and serves, not by the person to whom it attaches." <u>Ibid.</u> (emphasis in original). "Administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." <u>Id.</u> at 228. It is "the nature of the function performed, not the identity of the actor who performed it, that inform[s]" an "immunity analysis." <u>Id.</u> at 229.

In <u>Forrester</u>, the Supreme Court held that a judge was not entitled to judicial immunity where it was clear that the judge "was acting in an administrative capacity" in demoting and discharging an employee. <u>Ibid.</u> Such "acts -- like many others involved in supervising court employees and overseeing the efficient operation of a court -- may have been quite important in providing the necessary conditions of a sound adjudicative system"; however, the relevant

"decisions at issue . . . were not themselves judicial or adjudicative." Ibid.; see also Mendoza v. Larotonda, 270 F. App'x 157, 159 (3d Cir. 2008) (applying this same "functional" test for immunity).

Defendants' policy or practice was developed by Judge McInerney and Rosa Henry in their administrative capacities and is acted upon by Municipal Court personnel, Township police, and also Judge McInerney. Pl. SUMF at ¶¶177-195, 214, 52, 73, 105-123. Moreover, while judicial immunity protects a judge from liability for her mistake or error, even when such error was motivated by malice or corruption, Stump, 435 U.S. at 355-56, it cannot insulate Defendants for systemic injustices inflicted on indigent persons, pursuant to their administratively-adopted policy, which necessitates the cooperation and participation of various non-judicial Township employees. Pl. SUMF at ¶¶177-195, 214, 52, 73, 105-123 (all showing how the policy or practice is enforced by violations clerks, police, and the judge); see also Pl. SUMF at ¶¶136-141 (Burlington Township Police Lieutenant asking Officer McDonough to write a report about the events of May 27, 2014, one year later and after McDonough had left Burlington Township employment, in response to a complaint against Judge McInerney).

Here, the record irrefutably provides that Plaintiff's deprivation of his constitutional rights suffered by Plaintiff was the result of a particularized practice, administratively designed by Judge McInerney and furthered by Court Administrator Henry, whereby Defendants arrest and jail certain municipal defendants as means of coercing same-day payment of fines and fees.[10] Indeed,

---

[10] See Pl. SUMF at ¶¶105-23 (explaining Defendants' policy); ¶¶30-49 (showing beyond genuine dispute that Defendant sentenced Plaintiff to jail on the basis of his inability to immediately pay fines); ¶¶56-65, 200 (Judge McInerney did not consider Plaintiff's indigency); ¶¶50-55 (Plaintiff's deprivation of his right to counsel); ¶¶66-73 (Plaintiff's deprivation of liberty, his right to be free from unlawful search and seizure); ¶74 (Plaintiff was immediately released only upon payment in full of his fines and fees); ¶¶75-89 (showing that Defendants similarly implemented their unconstitutional policy against another professedly-indigent individual on May 27, 2014); ¶¶62-

the unlawful arrest and jailing of Plaintiff was clearly not a single judicial error, as it required the training and cooperation of Burlington Township employees in both the police department and the municipal court office pursuant to Defendants' policy, the existence of which was demonstrated through the testimony of nearly all witnesses involved in the policy's enforcement.[11] Indeed, on days when court proceedings were held, Municipal Court employees even posted a sign advising municipal defendants of the minimum same-day payments required under the policy. Pl. SUMF at ¶105 (citing the photocopy of the sign which has been included at Pl. Ex. A). Benefited by the policy, Burlington Township generates roughly half a million dollars in municipal court revenue per year. Pl. SUMF at ¶170.

Under the policy, if a municipal defendant asserts an inability to satisfy the aforementioned minimum payment at the Burlington Township Municipal Court's violations window, he or she must complete a certified financial questionnaire declaring assets, income, and expenses. Pl.

---

64 (showing that Judge McInerney consistently failed to make requisite inquiries into ability to pay when handling time payment plan requests on May 27, 2014).

[11] See Pl. SUMF at ¶118 (Rosa Henry testified that she trains Municipal Court employees on the minimum payment guideline portion of Defendants' policy); ¶113 (a Deputy Court Administrator knows not to generate "commit" or commitment to jail forms when Judge McInerney sentences certain individuals to jail and orders them arrested, because she knows that he does not actually intend for them to be sent to jail and will instead recall them from the Township jail cells after all other proceedings are adjourned for the day); ¶¶114, 212 (Township employees for the court and police department understand that such individuals are to be released, without having to be recalled before Judge McInerney, if they are able to find a benefactor to hand-deliver payment in satisfaction of all fines and fees imposed); ¶72 (a Burlington Township Municipal Court employee told Dr. Kneisser that Plaintiff would not be released unless Plaintiff's fines and fees in person and in full); and see Def. SUMF (Doc. No. 33-4) at ¶¶67-68 (Judge McInerney asserting that he never meant for Plaintiff to be sent to county jail, and instead intended to recall Plaintiff from the Township jail cells "later in the Court session to come to an agreement on how he was going to pay the fines," which is wholly consistent with Defendants' policy as described by Plaintiff herein and on his Motion); see also, Defendants' Statement of Material Facts Not in Dispute (Document No. 34-4) (Defendants asserting that: "No commitment had been prepared to transfer Kneisser to jail. McInerney had intended to call Kneisser back into the courtroom at the end of the session to make payment arrangements. He was unaware that the fine had been paid.").

14

SUMF at ¶¶116-20. The individual will be instructed by court personnel and also Judge McInerney to make a phone call to ask a third party for money to pay their fines and fees. Pl. Ex. II at 42:9-11; Pl. Ex. DD at 46:4-7; Pl. Ex. EE at 42:19-24; Pl. Ex. FF at 33-34;  Pl. Ex. GG at 31:2-4, 33:10-25; Pl. Ex. HH at 44-45; Pl. Ex. II at 23; Pl. Ex. HH at 53-54; Pl. Ex. GG at 33-34; Pl. Ex. X, ¶12; see generally, Pl. SUMF at ¶¶14, 33, 41, 44-46, 54, 82-83, 100, 108-09, 114, 204, 208, 212. In the event that such a phone call yields no benefactor, or when an individual states that they have no one that they can call, it is Defendants' policy to deny such individuals their constitutionally-mandated opportunity to prove their indigency and inability to pay. See generally, Pl. SUMF at ¶¶14, 33, 41, 44-46, 54, 82-83, 100, 108-09, 114, 204, 208, 212. Instead, such individuals risk being accused of refusing to pay and sentenced to jail. See e.g., Pl. SUMF ¶¶14, 35, 37-38, 42, 44, 45-46, 52, 113.  Thereafter, they are arrested and held in Burlington Township jail cells where they are eventually permitted to make a telephone call and ask for money. See SUMF ¶¶113-14; ¶49. Pursuant to a standing authorization established in accordance with the policy, Township police officials and court employees understand that after a municipal defendant's fines are paid in full, they may be released without any further appearance before or permission from Judge McInerney. Pl. SUMF ¶¶72-74, 83-84, 113-14, 212; Pl. Ex. II at 59-60; Pl. Ex.  Y, ¶6; Pl. Ex.  Z at 106:17-18; Pl. Ex. CC at 19-20; Pl. Ex. FF at 68:3-6; Pl. Ex. II at 45-46.

As in Forrester, it was Judge McInerney's administrative function in establishing and enforcing this policy against Plaintiff – not his judicial title – that makes judicial immunity inapplicable. Here, the record provides no room for debate regarding the complex system adopted by Defendants to collect same day payment from municipal defendants, without regard to indigency.  The complicated dance that is Defendants' policy – despite being an undeniable affront

to our Constitution – does not amount to a single judicial act or error. It is an administratively-designed machine, a multi-level process and agreed-upon practice, and a lucrative one at that.

It cannot matter whether Judge McInerney plays out this saga every day or only several times a year, because the Burlington Township employees are trained on this policy's every step and integral to its implementation.

### C.  Judicial Immunity is Inapplicable to Claims Under <u>Monell</u> and its Progeny

As Plaintiff argued in his Brief in Support of Partial Summary Judgement, it is beyond any genuine dispute that Defendants' unconstitutional policy or practice was the singular cause of his deprivation of rights. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements  or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).

As Plaintiff set forth in detail in his brief in support of this Motion, Defendants are liable for the administratively-created policy established by Judge McInerney, who Burlington Township has appointed as the official responsible for establishing such policies. <u>See</u> Document No. 35 (Pl. Br. in Support of Partial Summary Judgement at 17-19).

When Judge McInerney establishes any Burlington Township Municipal Court policies, practices, and procedures, he does so in his administrative capacity; therefore, there can be no judicial immunity over injuries arising out of such policies, practices, or procedures. <u>See</u> <u>Forrester</u>, 484 U.S. at 227-29. Judge McInerney's own testimony is dispositive on this point.

Judge McInerney testified to his role and that of the Municipal Court Administrator, with regard to setting municipal court policies, as being "the executive component of the court." Pl.

SUMF at ¶179 (citing Pl. Ex. Z at 48:5-6). He explained that as the "executive component" of the municipal court, the municipal court judge and municipal court administrator "decide . . . certain procedures within the office" of the municipal court, including "decisions regarding a court['s] operation," such as "which deputy is going to do what type of function within the office," "when you're going to have court, [and] what time you're going to start" court. Pl. SUMF at ¶180. When Judge McInerney and Municipal Court Administrator Henry decide to change policy pursuant to their roles as the "executive component" of Burlington Township Municipal Court, they "discuss" the "change in procedure," "decide what the change would be," and also "ensure that that change is effectuated."  Pl. SUMF at ¶181. As municipal court judge, Judge McInerney "is responsible for the operation of the municipal court and the court administrator directs the day to day operation of the municipal court under the supervision of the judge." Pl. SUMF at ¶182. There can be no dispute that Judge McInerney has the authority to establish, implement, change, and/or enforce policies, procedures, and/or guidelines concerning the operation of the Municipal Court, which includes the authority to establish same regarding the payment of fines, issuing time payment plans, amending time payment plans, case management and adjudication, administrative issues, and functions of court personnel, among other things. Pl. SUMF at ¶183 (citing Pl. Ex. X, ¶5 (Defendant McInerney's Fed. R. Civ. P. 36 Admission to same)).

The Fifth Circuit has held "[t]here are . . . many actions of a county judge that may justifiably be considered to constitute or represent county 'policy' under Monell." Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir. 1980) (finding that a county judge's enforcement of a state statute did not constitute such a policy). Examples include presiding over the county's legislative

body, preparing the county budget, and conducting elections. Id. More generally, the Fifth Circuit found,

> [A]t least in those areas in which [the county judge], alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983.

Id. (citing Monell, 436 U.S. at 694). Because a judge enjoys judicial immunity over most judicial acts, except those taken in complete absence of jurisdiction, "[o]nly . . . [for] actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy under . . . Monell." Johnson v. Moore, 958 F.2d 92, 93-94 (5th Cir. 1992) (dismissing a § 1983 claim against a municipal judge and city because defendant failed allege the existence of a municipal policy under Monell, and because the plaintiff never contended that he was sentenced pursuant to the judge's administrative or other non-judicial duties). Therefore, Monell claims against municipal judges are inextricably connected to the functional exception to judicial immunity pursuant to Forrester, 484 U.S. at 227-29. See also, Carbalan v. Vaughn, 760 F.2d 662, 665 (5th Cir. 1985) (rejecting plaintiff's Monell argument against a judge who refused to accept a motor club card as bail because 1) there was no evidence it was county policy and 2) there was no evidence it happened more than once).

In Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989), the court, relying on Forrester, found judicial immunity did not apply to a judge's moratorium on the issuance of writs of restitution during a holiday season because the moratorium was an administrative decision. The Sixth Circuit held:

> Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. [The judge]'s moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court.

> This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast majority of cases, appeal the court's decision to a higher court; here, no direct appeal is available, making the absence of judicial liability far less reasonable.

Id. (emphasis added). Likewise, Defendants' policy or practice here, partly commemorated in "the Sign" but otherwise established in great detail in the record as outlined by Plaintiff's Statement of Undisputed Material Facts, is distinguishable from any singular sentencing decision or mistake.[12]

By way of example, Judge McInerney testified that sometimes a "conflict judge" will have to be assigned to "fill in for [a municipal court] judge." See Def. Ex. 7 at 138:13-17. Pursuant to the doctrine of judicial immunity, if a conflict judge sitting in Burlington Township Municipal Court had no role in the creation of Defendants' policy or practice but sentenced one municipal defendant in accordance with the policy or practice, the conflict judge might reasonably be insulated from liability for that one judicial act of sentencing, despite the unconstitutional result. Here, Judge McInerney's, and therefore Burlington Township's, liability is not specific to

---

[12] See also ODonnell v. Harris Cty., No. H-16-1414, 2016 U.S. Dist. LEXIS 174628, at *113, *76-77, *106-07 (S.D. Tex. Dec. 16, 2016) (unpublished) (denying a motion to dismiss claims regarding bail practices against several county judges under the doctrine of judicial immunity and relying on Monell and Forrester); at ODonnell v. Harris Cnty., No. H-16-1414, 2017 U.S. Dist. LEXIS 65445, at *236-37 (S.D. Tex. Apr. 28, 2017) (unpublished) (denying defendants' motion for summary judgment and issuing a preliminary injunction requiring Harris County to make change its policies). In addressing the defendants' judicial immunity argument a second time, the court noted:

> The County argues that it has no liability because the policies at issue are created by judges acting in their judicial capacities or are required by Texas law . . . The record evidence, however, shows customs and practices, amounting to policy, that are neither created by judges in their judicial capacity nor mandated by Texas state law.

Ibid. The court further held that the County could be held liable under § 1983 for the policy choices made by the County Judges in their capacity as legislators and as administrative rule makers. Id. at *236-37.

Plantiff's sentence itself, but rather arises out of the administratively-created policy under which Plaintiff's entire injury arose. See Pl. SUMF at ¶¶105-23.

Here, not only has Plaintiff shown beyond any genuine dispute that Defendants' policy: (1) was created by Judge McInerney in his administrative capacity, (Pl. SUMF at ¶¶177-95); (2) is regularly enforced, (Pl. SUMF at ¶¶52, 108, 115, 212); (3) implicates far more than the sentencing component, as it also requires participation of Municipal Court personnel and Burlington Township police officers , (Pl. SUMF at ¶¶52, 66-74, 105-23); and (4) is known to be unlawful for various reasons, but nevertheless continues to be enforced by Defendants, collectively (Pl. SUMF at ¶212).

Therefore, pursuant to Monell and Forrester, and for all other reasons explained herein, judicial immunity cannot apply.

### D. Defendants' Policy was Established in Complete Absence of Jurisdiction.

Even if Defendant attempted to argue, despite his overwhelming testimony to the contrary, that his role in establishing and enforcing Defendants' policy or practice was a judicial act, rather than administrative one, they would necessarily fail because establishing the policy in question was definitively "taken in complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12 (judicial immunity does not apply to judicial acts "taken in complete absence of all jurisdiction"); see also In re Kendall, 712 F.3d at 834 (same).

"[T]he term 'jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.'" United States v. Cotton, 535 U.S. 625, 630 (2002) (quoting Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 89 (1998). Therefore, the creation of policies, procedures, or practices are not matters of jurisdiction but rather of administrative authority. There can be no genuine dispute that Judge McInerney had the administrative authority to create, implement and

enforce policies, practices, and procedures. Pl. SUMF at ¶¶177-95. Burlington Township has irrefutably vested him with that authority repeatedly through his continued reappointments. Pl. SUMF at ¶¶177-78.

Because Plaintiff's claims arise under <u>Monell</u> and its progeny, and he has identified Judge McInerney as the final policymaker responsible for the creation of Defendants' policy or practice under which Plaintiff's rights were violated, the question of Judge McInerney's liability simply does not turn on jurisdiction; with regard to establishing and enforcing this unconstitutional policy, Judge McInerney had no jurisdiction. Indeed, Plaintiff has shown that Defendants' policy was in complete contravention of the policies and directives of the New Jersey Judiciary. Pl. Ex. M (New Jersey Administrative Office of the Courts Directive #02-10, providing that indigent defendants <u>shall</u> be afforded time payment plans); Pl. SUMF at ¶¶192-201; Pl. SUMF at ¶¶ 207-11.

Therefore, judicial immunity cannot apply, because Defendant's actions in establishing and enforcing the policy were undertaken in complete absence of jurisdiction.

### III. <u>Defendant's Argument that He is Not a "Person" Under Section 1983 Misapprehends the Law.</u>

Defendant's reliance on an unpublished State chancery decision is misplaced, and, in any event, his argument relying on same clearly misapprehends the law. <u>See</u> Def. Br. at 31 (citing <u>A.V. v. Ashrafi</u>, Doc. No. BER-C-58-15 (N.J. Ch. Div. June 11, 2015) (unpublished)).

Defendant contends that as Municipal Judge for Burlington Township, he is not a "person" pursuant to Section 1983. As Plaintiff explained with regard to a similar argument raised by Judge McInerney in his Opposition to Plaintiff's Motion for Partial Summary Judgement (<u>see</u> Doc. No.

45 (Def. Opp. Br.) <u>and</u> Doc. No. 48 (Pl. Reply to same)), this argument misapprehends Section 1983, generally, and <u>Monell</u> claims, specifically.

In <u>A.V.</u>, in deciding a suit against State Appellate Division and Superior Court judges, the New Jersey Chancery Division noted:

> A state is not a "person" within the meaning of § 1983. While state officials, such as judges, are literally persons, "a suit against a <u>state official</u> in his or her official capacity is not a suit against the official but rather a suit against the official's office." Therefore, neither a state nor its officials acting in their official capacities are persons amenable to suit under § 1983 or the NJCRA.

<u>Id.</u> at *28 (emphasis added) (quoting <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 64 (1989)). State officials, acting in their official capacities, may be entitled to sovereign immunity. While the Chancery Division was correct, such language is entirely inapposite here, because Judge McInerney, in his capacity as Municipal Judge for Burlington Township, is not a State official.

The doctrine of sovereign immunity is not limited to the State itself; it also extends to state agencies and state officers who act as the <u>alter ego</u> of the State. <u>See</u> <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997)). Notably, Eleventh Amendment sovereign immunity does not extend to municipalities unless the state is a "real party-in-interest." <u>Chisholm v. McManimon</u>, 275 F.3d 315, 322 (3d Cir. 2001); <u>see also</u> <u>Ford Motor Co. v. Dept. of Treasury of Indiana</u>, 323 U.S. 459, 464 (1945); and <u>Blake v. Kline</u>, 612 F.2d 718, 721 (3d Cir. 1979) (federal courts are only jurisdictionally barred by the Eleventh Amendment from entertaining a suit, when the State is named as a party or when a named party is, in actuality and demonstrably, the <u>alter ego</u> of the State). Moreover, the party asserting Eleventh Amendment immunity bears the burden of proving it enjoys such immunity in the context of the specific facts at hand. <u>Christy v. Pa. Turnpike Comm'n.</u>, 54 F.3d 1140, 1144 (3d Cir. 1995).

Judge McInerney has not and cannot show that he is a State official entitled to Eleventh

Amendment sovereign immunity in his role as Municipal Judge for Burlington Township. Instead, the record is replete with numerous facts to the contrary: Judge McInerney is appointed by the Mayor, with the advice and consent of the Burlington Township Council. Pl. SUMF ¶157. Judge McInerney, as a municipal court judge in New Jersey, is not entitled to tenure, and he therefore must be reappointed every three (3) years, at the will of Burlington Township's government. Pl. SUMF ¶158; <u>see also</u> New Jersey Courts, "Qualifications to Become a Municipal Court Judge," https://www.njcourts.gov/courts/mcs/qualifications.html ("Municipal Court Judges do not have tenure and are not subject to a mandatory retirement age, characteristics which distinguish them from other Judges within the Judiciary. The majority of the State's Municipal Court Judges serve only part-time and, as a result, are able to maintain private law practices, subject to the Rules of Court.).  Judge McInerney's salary as judge of the Burlington Township Municipal Court is established and paid by Burlington Township. Pl. SUMF ¶164. And through Ordinance 20-47, the Township has authorized Judge McInerney to act as a final, administrative policymaker on its behalf. <u>See</u> Burlington Township Ordinance 20-47(A)(5)(e) (the municipal court judge is vested with the authority to "act as administrative head of the office of the Court and be responsible for the proper and efficient administration of the Courts," which is "in addition to such other duties as may be prescribed by state statute." ).

Therefore, Defendant's argument that he is not a "person" for purposes of Section 1983 liability must be denied.

<b><u>CONCLUSION</u></b>

Defendant's Motion for Summary Judgment, which he argued solely on the basis of judicial immunity, must be denied, because: (1) Defendant has failed to satisfy his burden in establishing the applicability of the affirmative immunity defense; (2) the immunity defense does

23

not apply; and (3) Defendant, as municipal court judge, is clearly a "person" subject to Section

1983 and the NJCRA. Moreover, Defendant has also plainly failed to show that the factual basis

upon which he bases his motion is not subject to genuine dispute.

 For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's

motion for summary judgment.

Respectfully Submitted,

Dated: June 19, 2017     By: _____

           Alexi M. Velez, Esq.

**AMERICAN CIVIL LIBERTIES UNION**
** OF NEW JERSEY FOUNDATION**
Jeanne LoCicero
Alexander Shalom
Alexi M. Velez
89 Market Street, 7th Floor
P.O. Box 32159
Newark, NJ 07102
Telephone: (973) 854-1715
Facsimile: (973) 642-6523

**CARLUCCIO, LEONE, DIMON,**
** DOYLE & SACKS, LLC**
Marguerite Kneisser
9 Robbins Street
Toms River, NJ 08753
Tel: (732) 797-1600 ext. 223
Facsimile: (732) 797-1690

*Counsel for Plaintiff*