**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANTHONY KNEISSER,<br><br>                              Plaintiff,<br><br>          v.<br><br>THE HONORABLE DENNIS P.<br>MCINERNEY, Individually and in his<br>official capacity as Municipal Court Judge<br>of Burlington Township and the Burlington<br>Township Municipal Court; TOWNSHIP<br>OF BURLINGTON; TOWNSHIP OF<br>BURLINGTON MUNICIPAL COURT; and<br>JOHN DOES 1-10,<br>                              Defendants. | Civil Action No.: 15-7043 (NLH/ AMD)<br><br>**JURY TRIAL DEMANDED**<br><br><br>**MOTION DAY: JULY 3, 2017** |

**PLAINTIFF'S BRIEF IN OPPOSITION TO TOWNSHIP DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ………………………………………………………. ii-iv

INTRODUCTORY STATEMENT……………………………………………. 1

LEGAL ARGUMENT

   I.   THE EVIDENCE DEMONSTRATES THE EXISTENCE OF
       DEFENDANTS' UNCONSTITUTIONAL POLICY OR PRACTICE
       BEYOND ANY GENUINE DISPUTE………………. ………………… 2

       A.   JUDICIAL IMMUNITY IS INAPPLICABEL TO JUDGE
             MCINERNEY'S ADMINISTRATIVE PROMULGATION OF
             THE POLICY……………………………………………………. 8

       B.   JUDGE MCINERNEY, AS OFFICIAL POLICY MAKER FOR
             BURLINGTON TOWNSHIP, ESTABLISHED DEFENDANTS'
             UNCONSTITUTIONAL POLICY, RENDERING THE
             TOWNSHIP LIABLE FOR ITS RESULT…………………………. 13

       CONCLUSION…………………………………………………………… 20

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986)……………………………………………………………..1,9

<u>Antoine v. Byers & Anderson</u>,
508 U.S. 429, 432 (1993)…………………………………………………….. 9

<u>BMI Salvage Corp. v. Federal Aviation Administration</u>,
272 Fed. Appx. 842, 852 (11th Cir. 2008)…………………………………………9, 17

<u>Bogan v. Scott-Harris</u>,
523 U.S. 44 (1998)…………………………………………………………………12

<u>Boyd v. Carroll</u>,
624 F.2d 730, 732-33 (5th Cir. 1980)…………………………………………9

<u>Bradley v. Fisher</u>,
80 U.S. 335, 349-50 (1871)…………………………………………………………9

<u>Burns v. Reed</u>,
500 U.S. 478, 486-87 (1991)………………………………………………………...9

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986)…………………………………………………………………1, 2

<u>Cherrits v. Ridgewood</u>,
311 N.J. Super. 517, 526 (App. Div. 1998)…………………………………………*Passim*

<u>City of St. Louis v. Praprotnik</u>,
485 U.S. 112 (1988)…………………………………………………………………17

<u>Clinton v. Jones</u>,
520 U.S. 681, 693-95 (1997)………………………………………………………...10

<u>Dennis v. Sparks</u>,
449 U.S. 24, 31 (1980)……………………………………………………………9

<u>Figueroa v. Blackburn</u>,
208 F.3d 435 (3d Cir. 2000)…………………………………………………………3

<u>Familias Unidas v. Briscoe</u>,
619 F.2d 391, 404 (5th Cir. 1980)……………………………………………...18

Forrester v. White,
484 U.S. 219, 224 (1988)……………………………………………………*Passim*

Harper v. Merckle,
638 F.2d 848, 855 n.8 (5th Cir. 1981)…………………………………………………9

Hill v. Borough of Kutztown,
455 F.3d 225 (3d Cir. 2006)……………………………………………………14

Hines v. Albany Police Dep't.,
520 Fed. Appx.  5 (2d Cir. 2013)………………………………………………17, 19

K.D. v. Bozarth,
313 N.J. Super. 561 (1998)………………………………………………………..3

Mancini v. Northampton Cnty.,
836 F.3d 308, 313 (3d Cir. 2016)…………………………………………………1

McGreevy v. Stroup,
413 F.3d 359, 367 (3d Cir. 2005)…………………………………………………13, 17

McMillian v. Monroe County,
520 U.S. 781, 785 (1997)……………………………………………………17

Mireles v. Waco,
502 U.S. 9, 12 (1991)…………………………………………………………..10

Monell v. Dep't of Soc. Servs.,
436 U.S. 658 (1978)……………………………………………………*Passim*

Morrison v. Lipscomb,
877 F.2d 463, 466 (6th Cir. 1989)………………………………………………...10, 12

O'Donnell v. Harris Cty.,
No. H-16-1414, 2016 U.S. Dist. LEXIS 174628 at *113 (S.D. Tex. Dec. 16, 2016)..11, 12

Parkell v. Danberg,
833 F.3d 313,323 (3d Cir. 2016)…………………………………………………..2

Pembaur v. City of Cincinnati,
475 U.S. 469, 478-84 (1986)………………………………………………...14, 17

Pierson v. Ray,
386 U.S. 547, 554 (1967)………………………………………………………9

Schiazza v. Zoning Hearing Bd.,
168 F. Supp. 2d 361, 373 (M.D. Pa. 2001)…………………………………………9

Sibley v. Lando,
437 F.3d 1067, 1070 n.2 (11th Cir. 2005)…………………………………………...8

State v. Winne,
12 N.J. 152, 168 (1953)…………………………………………………………..17

Stomel v. City of Camden,
192 N.J. 137, 145 (2007)…………………………………………………………17

Williams v. Butler,
863 F.2d 1398 (8th Cir. 1988)……………………………………………………18

Willis v. UPMC Children's Hosp. of Pittsburgh
808 F.3d 638, 643 (3d Cir. 2015) (citing Celotex, 477 U.S. at 323)………………..2

**STATUTES & RULES**

Fed. R. Civ. P. 56(c)…………………………………………………………………1

## INTRODUCTORY STATEMENT

The Township Defendants filed a Motion for Summary Judgment seeking dismissal of the claims against them on "judicial immunity" and "separation of powers" grounds. The entirety of Defendants' legal argument is premised on Defendants disregard of the facts of this case and misapplication or misunderstanding of the law. In this regard, Defendants assume, without identifying a shred of evidence to support their position, that, while Judge McInerney's conduct here was "unfortunate," it constituted a single instance of judicial misconduct and was not done pursuant to Defendants' policy or practice. As set forth below, and contrary to Defendants' unsupported argument, the record irrefutably demonstrates that the conduct in question here was the result of a particularized practice, administratively designed by Judge McInerney and furthered by Court Administrator Henry and Township law enforcement and employees, whereby Defendants arrest and jail municipal defendants as a means of coercing same-day payment of fines and fees, without regard to indigency. For these reasons, Defendants cannot rely on the doctrines of "judicial immunity" or "separation of powers" to escape liability here and, therefore, their Motion for Summary Judgment must be denied in its entirety.

## STANDARD OF REVIEW

Summary Judgment is only appropriate when the pleadings, depositions, and other documents in the record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Moreover, the facts must be viewed in the light most favorable to the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Mancini v. Northampton Cnty., 836 F.3d 308, 313 (3d Cir. 2016). An issue is genuine if a reasonable jury could return a verdict for the party opposing the motion. Anderson, 477 U.S. at 248. The moving party has the

1

initial burden of demonstrating that no genuine issue of material fact exists. Celotex, 477 U.S. at 323; Parkell v. Danberg, 833 F.3d 313,323 (3d Cir. 2016).

If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015) (citing Celotex, 477 U.S. at 323). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." Willis, 808 F.3d at 643 (citing Celotex, 477 U.S. at 322-323).

In this matter, the Township Defendants filed a Motion for Summary Judgment based on two (2) arguments: (1) Judicial Immunity and (2) Separation of Powers. Viewing the evidence in a light most favorable to the non-moving party, Plaintiff here, Defendants have failed to establish that judicial immunity or the "separation of powers" precludes a finding that the Township is liable for the conduct in question. As such, their Motion for Summary Judgment must be denied.

## I.   THE EVIDENCE DEMONSTRATES THE EXISTENCE OF DEFENDANTS' UNCONSTITUTIONAL POLICY OR PRACTICE BEYOND ANY GENUINE DISPUTE

The entirety of Defendants' brief is premised on their erroneous and unsupported assumption that the conduct complained of here was not the result of the promulgation and enforcement of a policy, but rather, a single instance of misconduct by a municipal court judge acting in his judicial capacity. This is so despite Defendants' failure to provide any facts or legal argument to counter the substantial evidence presented by Plaintiff demonstrating the existence of such a policy. This "single instance of misconduct," Defendants maintain, is not only

protected by judicial immunity, but is also insufficient to support a finding of Township liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

In support of their position, Defendants rely on a multitude of inapposite cases which hold that a municipality is not liable for singular acts of judicial error or mistake, on either judicial immunity grounds or pursuant to Monell. With respect to judicial immunity, Defendants rely heavily on Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). In Figueroa, the Court of Appeals concluded that "judges of courts of limited jurisdiction, such as the New Jersey municipal courts, are offered absolute immunity for their *judicial acts*." (emphasis added). Thus, the judge in Figueroa who improperly ordered a single municipal defendant arrested for contempt of court and sentenced him to thirty days imprisonment was entitled to judicial immunity.  See Figueroa, 208 F.3d at 435. With respect to Monell liability, Defendants rely on Cherrits v. Ridgewood, 311 N.J. Super. 517, 526 (App. Div. 1998), which found that a single instance of misconduct, without proof of a policy, was insufficient to establish municipal liability under Monell, and K.D. v. Bozarth, 313 N.J. Super. 561 (1998) which was also based on a single instance of misconduct by a municipal court judge acting pursuant to the judge's "adjudicatory role."

These cases are inapplicable to the facts of this case, rendering Defendants' reliance on same wholly misplaced. Plaintiff does not dispute that judicial immunity, in a general sense, applies to a single wrongful act of a judge undertaken in his judicial capacity, as was the case in Figueroa and Bozarth. While Plaintiff does dispute Defendants' contention that a single instance of misconduct can *never* establish municipal liability under Monell, contrary to the holding in Cherrits, that position is irrelevant here, where Plaintiff has met his burden in showing, beyond a genuine dispute, that his injuries are a result of Defendants' policy. Here, unlike in Figueroa,

Cherrits, and Bozarth, Defendants maintain a policy or practice, created and enforced by municipal officials vested by Burlington Township with the express authority to establish such policies or practices. The creation of this policy or practice was an inherently administrative task, rather than a judicial decree, and therefore judicial immunity is inapplicable. Furthermore, because the proofs conclusively establish Defendants' policy was created by "official policymakers" for Burlington Township, liability extends to the Township under Monell. Where Defendants' Motion relies solely on the argument that *no* policy exists, notwithstanding that Plaintiff has shown beyond any genuine dispute that one does exist and has set forth the nuance of such policy in great detail, the very foundation of Defendants' argument collapses and the house of cards must fall.

Defendants attempt to characterize the events of May 27, 204, as merely a "procedurally flawed and uncharacteristic action taken[1]," but the record evinces that the deprivation of constitutional rights suffered by Plaintiff was the result of a particularized policy, administratively designed by Judge McInerney and furthered by Court Administrator Henry and Township law enforcement, whereby Defendants arrest and jail municipal defendants as a means of coercing same-day payment of fines and fees, without regard to indigency. Pursuant to Defendants' policy, after being sentenced to a monetary fine by Judge McInerney, municipal defendants are sent to the court's violations window where a cashier will demand a minimum

---

[1] Defendants characterization of Judge McInerney's conduct in this regard is entirely disingenuous. With respect to the alleged disrespect, not only is this not reflected anywhere in the record, that contention has been repeatedly rejected by two independent tribunals. Moreover, Defendants did not warn Plaintiff that he was being held in contempt, did not follow any process to hold Plaintiff in contempt and, by their own admission, did not actually find Plaintiff to be in contempt. Particularly telling is that Plaintiff was permitted to be released only after the payment of the fine for his traffic offense, not any fines related to contempt, were paid.

payment in accordance with the threshold guidelines adopted by Judge McInerney and Court Administrator Henry.

These threshold guidelines were formerly publicly posted at the violations window, in a sign which stated as follows:

<div style="border:1px solid black; padding:1em; text-align:center;">

**PLEASE NOTE:**
IF YOUR FINES TOTAL OVER $200:

YOU ARE REQUIRED TO MAKE <u>AT LEAST</u>
A $200 PAYMENT TODAY

IF YOUR FINES TOTAL $200 OR LESS:

YOU ARE REQUIRED TO PAY YOUR FINE <u>IN FULL</u> TODAY

</div>

(<u>See</u> Pl. SUMF at ¶105; Pl. Ex. A; Pl. Ex. AA at 71-73). [2]

The sign reflected part of Defendants' general policy, which instructs municipal court and police personnel on how to treat defendants who are unable to pay their fines, and this policy implicates far more than any single adjudicative decision. <u>See</u> Pl. SUMF at ¶¶105-23.

Under the policy, if a municipal defendant asserts an inability to satisfy the aforementioned minimum payment at the Burlington Township Municipal Court's violations window, he or she must complete a certified financial questionnaire declaring assets, income,

---

[2] For the convenience of the Court, Plaintiff relies on the same appendices in support of his Motion for Partial Summary Judgment and this Opposition to Defendant's Motion for Summary Judgment. Accordingly, as used herein, Plaintiff's Pl. Ex. s ("Pl. Ex.") and Plaintiff's Confidential Appendix ("Pl. Confid. App'x") refer to those Pl. Ex. s and appendices submitted by Plaintiff in support of his May 17, 2017, Motion for Partial Summary Judgment. Additionally, Plaintiff also relies on his Statement of Undisputed Material Facts ("Pl. SUMF") submitted in support of same. <u>See</u>, ECF Doc. No. 35.

and expenses. Pl. SUMF at ¶¶116-20. The individual will be instructed by court personnel and also Judge McInerney to make a phone call to ask a third party for money to pay their fines and fees. (Pl. Ex. II at 42:9-11; Pl. Ex. DD at 46:4-7; Pl. Ex. EE at 42:19-24; Pl. Ex. FF at 33-34; Pl. Ex. GG at 31:2-4, 33:10-25; Pl. Ex. HH at 44-45; Pl. Ex. II at 23; Pl. Ex. HH at 53-54; Pl. Ex. GG at 33-34; Pl. Ex. X, ¶12; see generally, Pl. SUMF at ¶¶14, 33, 41, 44-46, 54, 82-83, 100, 108-09, 114, 204, 208, 212.) In the event that such a phone call yields no benefactor, or when an individual states that they have no one that they can call, it is Defendants' policy to deny such individuals their constitutionally mandated opportunity to prove their indigency and inability to pay. See generally, Pl. SUMF at ¶¶14, 33, 41, 44-46, 54, 82-83, 100, 108-09, 114, 204, 208, 212. Instead, such individuals risk being accused of refusing to pay and sentenced to jail. See e.g., Pl. SUMF ¶¶14, 35, 37-38, 42, 44, 45-46, 52, 113.  Thereafter, they are arrested and held in Burlington Township jail cells where they are eventually permitted to make a telephone call and ask for money. See SUMF ¶¶113-14; ¶49. Pursuant to a standing authorization established in accordance with the policy, Township police officials and court employees understand that after a municipal defendant's fines are paid in full, they may be released without any further appearance before or permission from Judge McInerney. Pl. SUMF ¶¶72-74, 83-84, 113-14, 212; Pl. Ex. II at 59-60; Pl. Ex.  Y, ¶6; Pl. Ex.  Z at 106:17-18; Pl. Ex. CC at 19-20; Pl. Ex. FF at 68:3-6; Pl. Ex. II at 45-46.

The existence of Defendants' policy is repeatedly confirmed in the deposition testimony of various Burlington Township personnel. Burlington Township Municipal Court personnel testified that they rely on the portion of the policy applicable to accepting payment at the violations window, which they sometimes referred to as a "guideline," when deciding whether to grant time payment plans for municipal defendants at the violations window. (Pl. Ex. AA at 30-

33, 72:3-18; Pl. Ex. DD at 27-28, 30:3-12; Pl. Ex. EE at 42:4-14; Pl. Ex. FF at 53:11-14, 54:14-17). The Burlington Township Court Administrator testified that it is the "guideline," and not an individual's ability to pay, which governs whether a Burlington Township Municipal Court employee will establish a time payment plan at the violations window.  Pl. SUMF at ¶¶105-07, 120. Judge McInerney testified to his belief that when a defendant does not pay some or all of the fines and fees imposed on the date of their hearing, a sentence loses its punitive effect. Pl. SUMF at ¶193; Pl. Ex.  X, ¶16. According to Judge McInerney, a sufficient payment for a "large fine…" would be $200. See Pl. Ex. Z at 107-08, 107:18-22, 28-29. Moreover, Court Administrator Henry testified that the Burlington Township Municipal Court personnel have an understanding that when a defendant owes $800, for example, the minimum amount that a court employee may accept is "normally $200." See Pl. Ex. AA at 31:3-7; Pl. SUMF at ¶¶116-18. Court Administrator Henry testified that Judge McInerney is aware of the guideline regarding such minimum same day payments, (Pl. SUMF at ¶117, Pl. Ex. AA at 32:5-6), that court personnel act in accordance with the guideline pursuant to "the judge's approval," (Pl. Ex. AA at 31:18-23), and that she trains municipal court personnel to act in accordance with this "guideline" (Pl. SUMF at ¶118; Pl. Ex.  AA at 32:15-18).

Other Burlington Township Municipal Court personnel also instruct municipal defendants to make phone calls to ask third parties for money towards fines. Pl. Ex. HH at 53-54; Pl. Ex. GG at 33-34 (Joyce West explaining that she instructed municipal defendants to make phone calls to ask third parties for money to put towards court fines and that "everybody in . . . our office would know the person would have to make a phone call" because "[w]e know that's the procedure."); Pl. Ex. AA at 39-40.

Defendants even acknowledged their unconstitutional policy in their responsive brief to Plaintiff's Motion for Summary Judgment, wherein they stated that, "Sometimes a defendant is asked to sit and wait until the end of the Court session so that the Court can talk to them again, similar to the case here." See DRB10.[3]

This complicated dance, in addition to being an undeniable affront to our Constitution, is plainly not limited to a "single instance of misconduct" by the municipal court judge. It is an administratively designed machine, a multi-level process and agreed-upon practice, and a lucrative one at that. It involves the administration and operation of court personnel, and is dependent upon the training, cooperation and participation of Burlington Township employees in both the police department and municipal court office, as was testified to by nearly all witnesses involved in the enforcement of the policy. It cannot matter whether Judge McInerney plays out this saga every day or only several times a year, because the Burlington Township employees of the court and police department have been trained on this policy's every step.

### A. JUDICIAL IMMUNITY IS INAPPLICABLE TO JUDGE MCINERNEY'S ADMINISTRATIVE PROMULGATION OF THE POLICY

Mindful that liability here is premised on Judge McInerney's promulgation of a policy, which constitutes an administrative as opposed to a judicial function, judicial immunity does not apply. Judicial immunity is an affirmative defense. See e.g., Sibley v. Lando, 437 F.3d 1067,

---

[3] See also RSUMF at ¶52 (Denying that "Judge McInerney has sentenced defendants to jail in the context of time payment request proceedings" by claiming, without citation, that "Defendants who have failed to pay their fines after having been given time to make payments and have the ability to do so have been sentenced to jail on rare occasions."). However, it is beyond genuine dispute that Plaintiff was not given time to make a payment, that he was unable to pay, that he did not refuse to pay, and that he was nevertheless sentenced to jail. SUMF at ¶¶1-49, 56-65, 66-74. It is beyond dispute that this was consistent with Defendants' policy or practice. SUMF at ¶¶105-123. And, further, this statement is further refuted by Judge McInerney's May 27, 2014, sentencing of another municipal defendant to jail for inability to pay, where such defendant had a prior time-payment order, but was also entitled to an inquiry into his ability to pay, which Judge McInerney did not afford him. SUMF at ¶¶75-89.

1070 n.2 (11th Cir. 2005); Harper v. Merckle, 638 F.2d 848, 855 n.8 (5th Cir. 1981); Boyd v. Carroll, 624 F.2d 730, 732-33 (5th Cir. 1980). "[A] party who has asserted an affirmative defense has the burden of proving the affirmative defense." BMI Salvage Corp. v. Federal Aviation Administration, 272 Fed. Appx. 842, 852 (11th Cir. 2008). Thus, the proponent of a claim to absolute immunity in a § 1983 action bears the burden of establishing the justification for such immunity. Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993) (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)); see also, Schiazza v. Zoning Hearing Bd., 168 F. Supp. 2d 361, 373 (M.D. Pa. 2001). Because Defendants have shown no genuine dispute with regard to the policy itself, they have failed to satisfy their burden in alleging the applicability of the affirmative defense.

Judicial immunity arose out of the public interest that judges be free to exercise independent judgment in their performance of the essential judicial act, adjudicating cases, without fear of having to defend a damages suit in another forum. See Dennis v. Sparks, 449 U.S. 24, 31 (1980) (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)); Bradley v. Fisher, 80 U.S. 335, 349-50 (1871). Judicial immunity "'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" Pierson, 386 U.S. at 554 (emphasis added).

The United States Supreme Court has taken a "functional" approach in determining the applicability of the judicial immunity doctrine in which they "examine the nature of the functions with which a particular official or class of officials have been lawfully entrusted, and…seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Forrester v. White, 484 U.S. 219, 224 (1988). This

functional approach ensures that judges may be absolutely immune only for those acts that are performed as part of their official judicial duties. Clinton v. Jones, 520 U.S. 681, 693-95 (1997) (emphasis added); Mireles v. Waco, 502 U.S. 9, 12 (1991).

While the United States Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity," the relevant case law "suggest[s] an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform." Ibid. (emphasis added). "Administrative decisions, even though they may be essential to the very functioning of the courts, have not been regarded as judicial acts." Id. at 228. It is "the nature of the function performed, not the identity of the actor who performed it, that inform[s]" an "immunity analysis." Id. at 229.  See Forrester, 484 U.S. at 228 (holding that a judge was not entitled to judicial immunity where it was clear that the judge "was acting in an administrative capacity" in demoting and discharging an employee probation officer).

Case law on this subject has established that acts involving the supervision of court employees, overseeing the efficient operation of the court, and promulgating a code of conduct for attorneys, although important to "providing the necessary conditions of a sound adjudicative system," were not themselves judicial or adjudicative. See Id.

In Morrison v. Lipscomb, 877 F.2d 463, 466 (6th Cir. 1989), the Sixth Circuit, relying on Forrester, found judicial immunity did not apply to a judge's moratorium on the issuance of writs of restitution during a holiday season because the moratorium was an administrative decision, holding that:

> Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. [The judge]'s moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court

10

personnel on how to process the petitions made to the court. This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast majority of cases, appeal the court's decision to a higher court; here, no direct appeal is available, making the absence of judicial liability far less reasonable. Id.

A series of opinions in the Southern District of Texas addressing recent litigation in Harris County, Tex., against 16 county judges over the court's customs and practices of setting bail is also instructive. In O'Donnell v. Harris Cty., No. H-16-1414, 2016 U.S. Dist. LEXIS 174628, at *113 (S.D. Tex. Dec. 16, 2016), the court denied the motion to dismiss claims against the county judges. The court explained Monell policy or custom doctrine, id. at *28-30, and found,

> [I]n: (1) promulgating the written Rules of Court; (2) overseeing and enforcing the alleged unwritten policies; and (3) acquiescing in the Hearing Officers' unwritten customs or practices by refusing to correct them in the written policies, the County Judges act in a legislative or administrative capacity to set policy for Harris County. Id. at *76-77.

Five months later, in ODonnell v. Harris Cnty., No. H-16-1414, 2017 U.S. Dist. LEXIS 65445, at *236-37 (S.D. Tex. Apr. 28, 2017), the court denied a motion for summary judgment and issued a preliminary injunction requiring Harris County to make changes to its bail policies. The court also addressed the defendants' judicial immunity argument a second time, writing,

> The County argues that it has no liability because the policies at issue are created by judges acting in their judicial capacities or are required by Texas law . . . The record evidence, however, shows customs and practices, amounting to policy, that are neither created by judges in their judicial capacity nor mandated by Texas state law. By an uncodified policy and practice, the County does not permit misdemeanor arrestees to be released on unsecured personal bonds until references are verified. By unwritten policy and practice, Pretrial Services asks misdemeanor arrestees for information on their ability to pay without informing them that the purpose is to determine their eligibility for release on nonfinancial or unsecured financial conditions. Pretrial Services does not ask what bond arrestees are able to pay. None of these unwritten rules, customs, or practices is required by State law.

11

> In its Memorandum and Opinion on the County's motion to dismiss, the court ruled that the County can be liable under § 1983 for the policy choices made by the County Judges in their capacity as legislators and as administrative rulemakers. *Id.* at *236-37.

Similarly, here, as set forth above, the record irrefutably demonstrates that the deprivation of Plaintiff's constitutional rights was the result of the promulgation and enforcement of a policy, which, like Forrester and O'Donnell, involved the "supervision of court employees" and "oversight over the efficient operation of the court." While "important to providing the necessary conditions of a sound adjudicative system," such acts were not themselves are not judicial or adjudicative. Forrester, 484 U.S. at 228. Moreover, as was the case in Morrison, the creation and enforcement of this policy constituted a "general order, not connected to any particular litigation." Here, the policy or practice did not alter the rights and liabilities of any parties but, rather, instructed court and police personnel on how to proceed regarding the collection of fines and fees. See also Bogan v. Scott-Harris, 523 U.S. 44 (1998).

That the creation of this policy was an administrative rather than a judicial function was, in fact, expressly acknowledged by Judge McInerney and Court Administrator Henry at their depositions. Judge McInerney described his role and that of the Municipal Court Administrator, with regard to setting municipal court policies, as "the executive component of the court." Judge McInerney defined and understood the "executive component" of the municipal court as follows (Pl. Ex. Z at 48:5-24):

> Q: And when you say executive role or – component, can you talk about what falls in that area?
>
> A: Well, you know, decisions concerning a court operation would be, you know, part of the executive component where the judge and court administrator would decide, you know, certain procedures within the office. You know, from which court administrator, which deputy is going to do what type of function within the office, those type of things. And, you know, when you're

12

going to have court, what time you're going to start, they're all things that would be discussed between the judge and the court administrator.

For these reasons, there can be no genuine dispute that Plaintiff's deprivation of rights arose out of Defendants' policy, which Judge McInerney created in his administrative capacity as final policymaker for the Township, rather than as the result of a singular judicial error. Accordingly, judicial immunity is not an available defense, and Defendants cannot rely on the doctrine to avoid liability in this case. As such, Defendants' Motion for Summary Judgment must be denied.

B. **JUDGE MCINERNEY, AS OFFICIAL POLICY MAKER FOR BURLINGTON TOWNSHIP, ESTABLISHED DEFENDANTS' UNCONSTITUTIONAL POLICY, RENDERING THE TOWNSHIP LIABLE FOR ITS RESULT**

Defendants' administratively-created policy also belies any assertion that the Township immune from liability because Judge McInerney has been appointed by the Township as an official policymaker. The standard for determining the Township's liability on the basis of its policies, practices, or customs was laid out in Monell, which held that a municipality can be held liable for the conduct of its employees or officers where that conduct implements an official policy or practice. See Monell, 436 U.S. at 634-35; McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005). An individual's conduct implements official policy or practice under a number of circumstances, including when: (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; (2) the individual himself has final policy-making authority such that his conduct represents official policy; or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or

13

speech after it has occurred. See Id.; See also Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-84 (1986)).

In denying liability, Defendants rely exclusively on the "separation of powers" and argue that "the township cannot be liable under section 1983 for plaintiff's claims concerning alleged BTMC unconstitutional policies, such as incarcerating indigent defendants who are unable to pay their fines and requiring a minimum payment, as due to the separation of powers, the township government possesses no authority over the municipal court which is part of the state judicial system and plaintiff has presented no facts to support the existence of such policies." Def. Br. at 16.

First, the undisputed facts of this case irrefutably undermine the foundation Defendants' assertion, because the Township indisputably exercises significant and well-established control over the Municipal Court. Defendants insist that the only power the Township exercises over the Burlington Township Municipal Court is with regard to "personnel, facilities and budgeting." Def. Br. at 16. However, it is beyond any genuine dispute that the Township's power over its Municipal Court includes: the power to select, appoint, and continually reappoint its municipal judge, who is not entitled to tenure, unlike members of the State Judiciary; the power to establish salaries for the judge and all court personnel; the power to grant or deny tenure to the Court Administrator, which the Township has granted to Rosa Henry here; the power to oversee the Municipal Court's budget; the power to finance or not finance the court's budget; what Township personnel described as the supervisory authority of the Township Administrator over Municipal Court Administrator Henry; enforcement of the Township's civil rights policy with regard to the Municipal Court and its personnel; the Township Administrator's annual employee evaluation of Court Administrator Henry, and Henry's annual evaluations of municipal court

personnel through use of Township evaluation forms and pursuant to Township employee evaluation procedures; the apparent authority of the Township Administrator to investigate complaints against the Municipal Court, as Township Administrator Corter testified that he had conducted such investigations and handled such complaints in the past; the Township Administrator's participation in the annual audit of the Municipal Court; the enforcement of Township human resources policies with regard to the Municipal Court and its employees; the enforcement of the Township's "policies and procedures manual" and "employee handbook" over the Municipal Court and its employees; the power to hire and fire Municipal Court personnel; the fact that Mayor Carlin testified that he has observed the Municipal Court on more than one occasion to ensure that he's satisfied with the "produc[t] [the Township is] delivering" with regard to the Municipal Court; monthly revenue reporting and distribution of payment by Court Administrator Henry to the Township; the mandatory participation of Judge McInerney in annual Township Council budget meetings, where Judge McInerney is expected to present the Municipal Court's budgets, as is expected of the Township's department heads; reliance upon the Municipal Court for approximately one half million dollars in Township revenue per year; etc. See generally, Pl. SUMF at ¶¶142-76.

Moreover, despite Defendants' contention that they are bound by State Judiciary rules that limit their authority over and connection with the Municipal Court, Plaintiff has shown beyond genuine dispute that the Township has a pattern of disregarding New Jersey Court Rules and ethical canons designed to limit both perceived and actual conflicts of interest between the Township – and/or Burlington City, as the two municipalities share one municipal court – and the Burlington Township Municipal Court. See Pl. SUMF at ¶¶124-35.

Defendants further claim that disciplinary authority over the Burlington Township Municipal Court Judge is vested exclusively with the judiciary. Def. Br. at 23. However, Plaintiff has shown beyond genuine dispute that while Township Administrator Corter advised Plaintiff's father that the Township had no authority to investigate a complaint regarding the events of May 27, 2014, Corter testified that he has investigated complaints regarding the Burlington Township Municipal Court in the past. Pl. SUMF at ¶152; see also, Pl. Ex. G at 21. Corter wrote that he referred the complaint to the ACJC, but thereafter Burlington Township Police Lieutenant Brinzinghoffer instructed members of the Burlington Township Police Department to run an unlawful confidential criminal background check on Plaintiff, and that information was provided to Officer Shawn McDonough – who no longer worked for Burlington Township, so that McDonough could write a Special Incident Report regarding the events of May 27, 2014 a year after the fact. Pl. SUMF at ¶¶136-41. Brinznghoffer told McDonough that the report was necessary to defend against "a complaint against" Judge McInerney. Pl. SUMF at ¶138. Therefore, while Defendants contend they have no role in judicial disciplinary decisions at the State level, the record reflects that they have – at the very least – taken an active role in defending against if not obstructing such complaints, even where their efforts relied on documents obtained through a knowing violation of law. See e.g., Pl. SUMF at ¶¶139-41.

Accordingly, Defendants' factual assertions regarding lack of control over the Municipal Court, lack of involvement in the Municipal Court's operations, and an inability to investigate or discipline Municipal Court employees and the municipal judge is unsupported by the record.

Second, if Defendants' position based on the separation of powers had any merit, the Township could never be liable for the conduct of its official policymakers in different branches of government, rendering Monell and its progeny meaningless. Such an argument would nullify

16

the findings in a multitude of cases which concluded that the chief of police was an official policymaker for purposes of 1983, see, for example Hines v. Albany Police Dep't., 520 Fed. Appx. 5 (2d Cir. 2013) and cases which concluded that the prosecutor was an official policymaker for purposes of 1983. See Pembaur, 475 U.S. at 484. It has specifically been recognized, including in a case relied upon by Defendants, that, while "policymaking functions may be separate or shared when it comes to law enforcement," Cheritts, citing State v. Winne, 12 N.J. 152, 168 (1953); Pembaur, 475 U.S. at 484, "…the inquiry must be sharply focused to determine what function exercised by the [policymaker] caused the violation of plaintiff's constitutional rights, and who had the ultimate policymaking power with respect to that function." Cherrits, 311 N.J. Super. at 529. As set forth above, the function exercised by Judge McInerney was an administrative, not a judicial function. Thus, the question becomes whether Judge McInerney had the ultimate policymaking power with respect to same.

Whether or not a municipal employee is a "final" decision maker is "a question of law for the trial court and is not an issue to be submitted to the jury." Stomel v. City of Camden, 192 N.J. 137, 145 (2007). If the trial court "has determined that an individual official has the power to make official policy on a particular issue, it is then for the jury to decide whether that individual's decision caused the deprivation of rights at issue." Id.

In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, McMillian v. Monroe County, 520 U.S. 781, 785 (1997) and City of St. Louis v. Praprotnik, 485 U.S. 112 (1988), and (2) whether the official's authority to make policy in that area is final and unreviewable. Praprotnik, 485 U.S. at 126, 127; Pembaur, 475 U.S. at 483; McGreevy, 413 F.3d

at 369; Brennan, 350 F.3d at 428 ("if a municipal employee's decision is subject to review . . . it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983").

Third, with respect to municipal court judges specifically, the Fifth Circuit has held "[t]here are . . . many actions of a county judge that may justifiably be considered to constitute or represent county 'policy' under Monell." Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir. 1980) (finding that a county judge's enforcement of a state statute did not constitute such a policy). In general, the Fifth Circuit found,

> [A]t least in those areas in which [the judge], alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983. Id. (citing Monell, 436 U.S. at 694).

Similarly, the 8th Circuit in Williams v. Butler, 863 F.2d 1398 (8th Cir. 1988) found that municipal liability existed based on the conduct of a municipal court judge in terminating a court employee. Because the municipality granted the judge "absolute authority to determine and administer employment policy in his court, a municipal court exercising traditional municipal functions," the municipality was liable under Monell. Notably, the termination of the employee was, like here, an administrative decision rather than a judicial one.

In this matter, by Defendants' own admissions and well-established by the record, Judge McInerney is the individual vested by the Township with final policy making authority with respect to the municipal business in question, namely, the payment and collection of fines. Acting pursuant to statute and municipal ordinance, Burlington Township, through its Mayor and Council, appointed Judge McInerney as Municipal Court Judge of the Township of Burlington Municipal Court and delegated to him the express authority to set and establish policies on

behalf of the Township and its Municipal Court, including policies pertaining to the payment of fines. Pursuant to Township Ordinance 20-47(A)(5)(e), the Township vested Judge McInerney with the authority to "act as administrative head of the office of the Court and be responsible for the proper and efficient administration of the Courts," this was so "in addition to such other duties as may be prescribed by state statute."

The Township has therefore irrefutably delegated broad responsibility for the daily operations of the Municipal Court to Judge McInerney, and his duties with regard to same are administrative, not a judicial, in function. Federal Courts addressing similar ordinances in the context of 1983 have interpreted it to have vested final decision-making authority in the chief of police. See Hines v. Albany Police Dep't., 520 Fed. Appx. 5 (2d Cir. 2013). Like the ordinance at issue in this case, the Albany City Code in Hines expressly authorized there, the chief of police, to "make, adopt and enforce such reasonable rules, orders and regulations" as were necessary for the police department's performance of all duties." Id. The chief testified that he had retained discretion to refuse to enforce the policy. Under those circumstances, the court held that the chief was the final decision maker responsible for establishing the policy with respect to the subject matter in question. Similarly, here, Judge McInerney was the "final decision maker responsible for establishing the policy with respect to the subject matter in question. As an appointed official delegated with such authority, Judge McInerney's conduct can be properly attributable to the Township.

Judge McInerney's authority was, in fact, confirmed by his own deposition testimony, whereby he testified that, as head of the Burlington Township Municipal Court, he has the authority to and/or is responsible for establishing, implementing, changing and/or enforcing policies, procedures, and/or guidelines concerning the operation of the Burlington Township

Municipal Court. Pl. Ex.   X, ¶2. Judge McInerney's testimony further confirmed that his decisionmaking in this regard was "final and unreviewable." That Judge McInerney's decision-making authority is final was addressed repeatedly by Township personnel during their depositions, who testified that they do not oversee the actions of Judge McInerney, and is even emphasized at length in Defendants' brief as a basis to deny liability. See Def. Br. pp. 15-35.

These facts establish that Judge McInerney is an "official responsible for making policy in the particular area of municipal business in question," and that said authority is "final and unreviewable." For these reasons, liability extends to the Township Defendants in accordance with the standards set forth in Monell. While Plaintiff does not refute that the AOC has some authority, there is no indication that such authority is exclusive, and indeed Plaintiff has shown beyond any genuine dispute that the Township's control over the municipal court and its employees is more than sufficient to establish liability. In any event, the Township has exclusive control over those it hires and appoints to create local policies or practices, as opposed to the State judiciary. Moreover, to the extent that Defendants claim that it is the judiciary that creates policies and exercises control, same cannot be reconciled with the two decisions that specifically note that Defendants' policy, at least as applied to Plaintiff, is in complete contravention of all relevant state policies, directives, and court rules.

## CONCLUSION

Defendants' Motion must fail because it makes no real attempt to even address the undisputed facts before this Court, instead baselessly asserting that Plaintiff has made no factual showing at all. Before a party can prevail on summary judgment, it must show that the facts necessary to grant its motion are not subject to any genuine dispute. Here, Defendants relentlessly insist that Plaintiff fails to show the existence of their policy, that the Township

20

exercises significant control over the Municipal Court, and that Judge McInerney is an official policymaker for Burlington Township with regard to the administration of its municipal court. In so doing, Defendants ignore Plaintiff's robust, undisputed, and well-established factual foundation for his claims and Plaintiff's evisceration of their characterizations of the relevant events of May 27, 2014. Because Defendants legal positions find no support in the record, and therefore can certainly not avoid genuine dispute, there Motion must fail on the procedural basis alone.

Respectfully Submitted,

MARGUERITE KNEISSER, ESQ.

**CARLUCCIO, LEONE, DIMON, DOYLE & SACKS, LLC**
Marguerite Kneisser, Esq.
9 Robbins Street
Toms River, New Jersey 08753
Ph: (732) 797-1600
Fax: (732) 797-1690

**AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION**
Edward Barocas, Esq.
Jeanne LoCicero, Esq.
Alexander Shalon, Esq.
Alexi M. Velez, Esq.
89 Market Street, 7th Floor
P.O. Box 32159
Newark, New Jersey 07102
Ph: (973) 854-1715
Fax: (973) 642-6523

*Counsel for Plaintiff*

21